## 19070

Mary Lee W. BEVIS, Appellant, v. Joe T. BEVIS and Pamela Bevis, a minor under the age of 14 years, Cynthia Bevis, a minor under the age of 14 years, and Jean E. Bevis Tinsley, of whom Joe T. Bevis and Jean E. Bevis Tinsley are, Respondents, and of whom Pamela Bevis and Cynthia Bevis, minors, are, Appellants.

(175 S. E. (2d) 398)

*Messrs. Gaines & Vermont,* of Spartanburg, *for Mary Lee W. Bevis, Plaintiff-Appellant,*

*James R. Turner, Esq.,* of Spartanburg, *for Respondent,*

June 26, 1970.

LEWIS, Justice.

This is a proceeding by a stepmother to adopt the two minor children of her husband by a prior marriage which had been ended by divorce. The proceeding was brought against the husband, the natural mother, and the two children. The husband and the guardian ad litem for the children joined in the request for adoption, but the natural mother refused to consent and contested the proceeding. The main issue under the pleadings concerned the necessity for the consent of the natural mother to the adoption. The step-

mother alleged and sought to prove that the consent of the natural mother was unnecessary because she had abandoned the children for a period of more than twelve months, and thereby forfeited her parental rights. The lower court found that there had been no abandonment and denied the adoption. The stepmother and the guardian ad litem for the children have appealed.

While the ultimate relief sought in this proceeding is the adoption of the children, the issue as to the consent of the mother was tried in the lower court, agreeably to all parties, as if the proceeding was brought under the provisions of Section 31-51.1 *et seq.,* 1962 Code of Laws, to bar the parental rights of the mother, and not as a question incident to a proceeding under the adoption statutes (Section 10-2587.2 *et seq.,* Supplement to 1962 Code of Laws).

As pointed out in *Richland County Department of Public Welfare v. Mickens,* 246 S. C. 113, 142 S. E. (2d) 737, Section 31-51.1 *et seq.,* provides a statutory remedy, separate from the adoption statutes, for determining whether or not a child has been "voluntarily abandoned". Upon a finding that the child has been so abandoned "for a period in excess of twelve months," the court may issue an order forever barring parental or guardianship rights, rendering the child eligible for adoption without the consent of the person whose rights have been so barred. This statutory remedy for determining whether a child has been abandoned is not exclusive. Such issue may be determined, as it relates to consent, in a proceeding under the adoption statutes. *Goff v. Benedict,* 252 S. C. 83, 165 S. E. (2d) 269. Also see: *Richland County Department of Public Welfare v. Mickens, supra.*

However, under the present facts, whether the issue of abandonment be considered under Section 31-51.1 *et seq.* or as incidental to the question of adoption, the result would be the same.

We held in *Goff v. Benedict, supra,* that statutes providing for the termination of parental rights of natural parents are to be strictly construed in favor of the parent and the preservation of the relationship of parent and child.

Under Section 31-51.1, parental rights may be barred only upon a finding that the child has been "voluntarily abandoned." While the statute uses the phrase "voluntarily abandoned," we do not think that it denotes any greater degree of neglect of the child by the parent than that generally encompassed by the term "abandonment." Abandonment, as used in connection with the adoption of children and the termination of parental rights, implies a voluntary act or a conscious disregard of the obligations owed by a parent to the child.

While it is difficult to formulate a definition that will cover all cases, as a general rule, "abandonment imports any conduct on the part of the parent which evinces a settled purpose to forego all parental duties and relinquish all parental claims to the child." 2 Am. Jur. (2d), Adoption, Section 32; Annotation: 35 A. L. R. (2d) 662; 2 C. J. S. Adoption of Children § 21d(2). It does not include an act or course of conduct which is done through force of circumstances or from dire necessity.

In making such a determination, the best interest of the child as well as the rights of parents are involved, and the completeness of the relinquishment of parental rights to constitute abandonment must be determined upon the basis of a due consideration of both.

The authorities agree that the question of abandonment is largely one of intent to be determined in each case from all of the facts and circumstances.

While other questions are presented, the first and basic issue for determination is whether the natural mother abandoned her children. The material facts are not in dispute.

The record shows that the defendants Joe T. Bevis and Jean E. Bevis were married on November 28, 1954 and resided in Spartanburg, South Carolina. Two children (girls) were born to the marriage—Pamela in December 1955 and Cynthia in June 1959. At the time of the last hearing in this matter in the lower court, Pamela was thirteen years of age and Cynthia was nine.

Joe and Jean Bevis had been experiencing marital difficulties and Jean instituted divorce proceedings against her husband on November 30, 1960 on the ground of physical cruelty. In an amended answer dated June 9, 1961, the husband charged the wife with adultery, and sought a divorce from her on that ground. It is undisputed that the wife was pregnant at that time from an adulterous affair. She went to Florida with her paramour about June 20, 1961, shortly before the hearing in the divorce case, and carried her two children with her. She and her paramour were never married but lived together as man and wife until about January 1968, during which time two children were born to this relationship.

After the wife left the State, the husband was granted a divorce from her on July 24, 1961 on the ground of adultery and was awarded custody of the children with reasonable visitation privileges to the wife.

Since the mother had carried the children out of the State, their custody could not then be delivered to the father as ordered by the court. However, the mother returned to the State with the children on a visit about two months after the divorce decree was entered, at which time, over the objection of the mother and with the aid of officers, the children were removed from her custody and delivered to the father. They have been in the father's custody since that time in Spartanburg.

After the children were removed from her custody, the mother returned to Florida. Subsequently she contacted the children at intervals by phone, letters, personal gifts, and

visits once or twice a year. In June 1964, she returned to Spartanburg when her mother died and visited with the children at that time. The children were living in the home of the paternal grandparents during this period.

Subsequently, on December 1, 1964, the father married Mary Lee Bevis, the plaintiff in this action, and the children have lived in the home with their father and his second wife, the stepmother, since that time. After the father's remarriage, the mother continued to write to her children, call them over the phone and visit them occasionally. The mother visited them in July 1966, about two or three weeks before this action was begun. The visits and contact by the mother with the children had apparently become obnoxious to the stepmother and, during this last visit, a dispute arose over visitation, resulting in a threat by the mother to secure an attorney to seek more liberal visitation privileges.

Shortly after the July 1966 visit, the stepmother instituted this action to bar the parental rights of the mother in order to effect an adoption of the children. It is clearly inferable from the record that the visits and contacts with the children by the mother had become obnoxious to the stepmother and that this action was instituted so as to prevent the mother from seeing the children at any time. As stated by the trial judge, "it is obvious from the plaintiff's testimony that she resented the natural mother's intrusions into her home and her continuing contacts with the children. She viewed the mother's contacts with the children as interference and as an unwanted influence."

Service of the pleadings in this matter upon the mother in Florida was attempted through an order of publication which, as will be seen, was subsequently set aside because of defective service. The mother made no appearance in the action and she was declared in default. After a hearing, an order was issued on November 3, 1966, in which the parental rights of the mother were terminated upon the ground that she had abandoned the children, and their adoption by the stepmother allowed.

It later appeared that the summons and complaint in this action was mailed to the mother at the wrong address and was never received by her. She did have knowledge however through a member of her family in November 1966 of the efforts of the stepmother to adopt the children and was later informed in March 1967 by a counselor that the children had been adopted. The mother continued to attempt to contact and see the children and, because of these continued contacts, she was served with a copy of the adoption decree and a letter from the stepmother's attorney about December 7, 1967. The mother testified that she thereafter contacted an attorney and paid him a retainer to represent her. When it developed that this attorney was too busy to handle the matter, she employed her present counsel. It was then discovered that service of the summons and complaint upon the mother had been defectively made and counsel for the plaintiff (stepmother) consented to the issuance of an order on October 23, 1968 vacating the adoption decree of November 3, 1966. The mother subsequently filed an answer and a series of hearings followed, resulting in the decree favorable to the mother, from which this appeal comes. Limited visitation privileges of the mother with the children, under the supervision of the court, have been allowed since the original adoption decree was set aside.

The mother testified that she has ended the affair with her paramour and separated from him in January 1968. While the fact is questioned, there is credible testimony that she has taken meaningful steps to change her life for the better.

A further review of the evidence would serve no useful purpose. The question here is not one of custody of the children. The natural mother only seeks to avoid termination of all parental rights. While the record shows misconduct on the part of the mother fully justifying the denial to her of custody, we think that the evidence sustains the finding of the lower court that she had no intent to abandon the children, and that the best interests of the children did not require such a determination. Her per-

sistent and continued contacts with them, her visitation efforts over the years, and personal gifts to them, of a nature to indicate solicitation for their welfare, show parental concern and negate an intent to forego all parental duties and relinquish all parental claims to the children.

It is argued however that because of the immoral conduct of the mother and the excellent care of the children in the home of the father and stepmother for several years, both of which are established by the record, the best interests of the children would be served by terminating the parental rights of the mother so that they can be adopted by the stepmother. This argument is not without some appeal.

However, the trial judge, after weighing all of the factors involved, concluded that the best interests of the children did not require a termination of all of the mother's rights. The children were thirteen and nine years of age a the time of the last hearing in the lower court. They are now fourteen and ten years of age. They have been in contact with the mother through the years. No doubt the trial judge concluded that continued limited, but strictly supervised, contacts by the children with the mother, while they continued under the dominant influences of the home provided by the father and stepmother, would not be detrimental to their best interests under all of the facts and circumstances of this case.

In determining matters of this kind a wide discretion must be allowed the trial judge who sees and observes the parties and, of necessity, acquires a peculiar knowledge and comprehension of the situation from close contact with it. We cannot say that the trial judge failed in this case to properly balance the equities between the welfare of the children and the rights of the mother. His finding, that abandonment on the part of the mother had not been shown, is affirmed.

As previously noted, a default adoption decree was issued in this matter on November 3, 1966. It is undisputed that legal service of the summons and

complaint was not made on the mother prior to the entry of such decree. She was first told of the adoption proceedings by a sister in November 1966 and on December 7, 1967 she was served with a copy of the final order. She thereafter obtained counsel and an order was secured on October 23, 1968 setting aside the adoption decree, approximately two years after its issuance, on the ground of the illegal service of the pleadings. This order was consented to by counsel for the stepmother but was issued without prior notice to the children or their guardian ad litem. It is contended by the guardian ad litem that the lower court erred in setting aside the default adoption decree without prior notice to the children or the guardian ad litem.

It is undisputed that the attempted service upon the mother was defective and that the court acquired no jurisdiction of her under it. No prejudice could have resulted to any right of the children merely because they were not given the opportunity to contest the undisputed fact that the court lacked jurisdicion to adjudicate the rights of the mother. The decision in *Galloway v. Galloway,* 249 S. C. 157, 153 S. E. (2d) 326, is not controlling. Here there is no dispute as to the facts which deprived the court of jurisdiction. In Galloway, the jurisdictional facts were in dispute.

The guardian ad litem contends however that the mother was estopped to assert the right to have the adoption decree set aside because of laches, and that the failure to give the children notice of the motion to vacate the decree deprived them of their right to assert such estoppel. The children have lost no right to have the foregoing issue determined. The question was raised by the guardian ad litem in the subsequent hearings in the lower court. Full testimony was taken on the issue and considered by the trial judge preliminary to a decision of the other issues. While they were entitled to be heard on the motion to vacate the adoption decree, the subsequent full consideration of the effect of the alleged laches of the mother on her rights afforded the children a legally effective hearing on the issue and no

prejudice has resulted to them from the failure to afford them an earlier opportunity to be heard.

Assuming that laches would estop the mother from asserting the right to have the judgment set aside for lack of jurisdiction, we agree with the trial judge that the facts do not warrant the application of the principle of laches in this case. Laches involves not only delay but injustice or prejudice to the opposite party.

The children had been living in the home with the stepmother since her marriage to their father on December 1, 1964. There was no material change in their situation after the adoption decree and the record fails to show the accrual of an intervening right of the children which would be prejudiced by the delay of the mother in moving to vacate the adoption.

The final question concerns the refusal of the lower court to permit the children to testify. It appears that the trial judge conferred with the children privately but refused to allow them to be called as witnesses in the open hearings. It is contended that the refusal to allow the children to so testify constituted a denial to the children and the stepmother of the constitutional guarantees of due process.

Regardless of the rights of the children to testify generally, the refusal to allow them to do so in this case could not have resulted in any prejudice to them or the stepmother. The purpose in having the children to testify was to give them "the opportunity to express by testimony what their feelings, wishes, and experiences in regard to the natural parent have been." They apparently would have testified that they wished to be adopted by the stepmother. The failure to allow them to so state in an open hearing could not have prejudiced them in this respect for the lower court held that every requirement for adoption by the stepmother had been met except consent of the natural mother. With reference to abandonment and consent, the record shows that the material facts were not in dispute.

Therefore the testimony of the children was unnecessary to establish any fact with reference to the conduct of the mother. The only question was whether the undisputed facts constituted abandonment.

Since the testimony of the children was unnecessary to establish any fact in issue, no prejudice resulted from the refusal to permit them to testify.

Judgment affirmed.

Moss, C. J., and BUSSEY and BRAILSFORD, JJ., concur.

LITTLEJOHN, J., dissents.

LITTLEJOHN, Justice (dissenting).

I respectfully dissent and would hold that the lower court erred in failing to rule that Jean Tinsley abandoned her children within the meaning of Sections 31-51.1 through 31-51.4 of the South Carolina Code of Laws for 1962, and erred in failing to grant the adoption.

This action is in equity, and this court has authority on appeal to find the facts in accord with our views of the preponderance or greater weight of the evidence. We may reverse a finding of fact by the lower court when the appellant satisfies us that the preponderance of the evidence is against the finding of the lower court. See *Simonds v. Simonds,* 232 S. C. 185, 101 S. E. (2d) 494 (1957), and the cases cited therein.

In *Goff v. Benedict,* 252 S. C. 83, 165 S. E. (2d) 269 (1969), this court by inference recognized that misconduct on the part of a parent may serve as a basis for holding that parental ties should be severed. Though the respondent here asserts that she did not intend to abandon the children, her conduct constituted abandonment and warrants the conclusion that parental ties should be severed. Intention should be judged objectively by the conduct of the parent rather than solely by what is said. Respondent has voluntarily placed herself in a sphere of living totally incompatible with parental duties. The present and future life of the children should

not be left to her arbitrary will, nor be controlled by her assertion that there was no intent to abandon. Intent involves a mental process and may be proved by circumstantial evidence as well as by utterances of the person whose intent is involved.

In my view the adoption should have been granted. In adoption proceedings there are four interested parties: (1) the minor children; (2) the parents or those standing in place of the parents; (3) the party seeking to adopt; (4) the State. *Galloway v. Galloway,* 249 S. C. 157, 153 S. E. (2d) 326 (1967).

The rights which the natural mother, Jean Tinsely, would assert must be considered; the welfare of the children must also be considered. It becomes the duty of this court to balance the equities and to determine whether the rights of the mother or the welfare of the children is paramount. Unfortunately, the rights claimed by the mother are inconsistent with the welfare of the children. Since 1961, when the natural mother went to Florida with Bill Tinsley, she has been to them a source of misery. The judge recognized that it was unsuitable for the children to visit with her at her home, or at the home of Joe and Mary Lee Bevis, and directed that visitations take place in his office under the supervision of one of his counselors until he ordered otherwise. There is nothing in the record before us to lead one to logically believe that her contacts with the children hereafter would contribute to their welfare. On the other hand, I am convinced that such would be detrimental. It is obvious that the children are now established in a good home. For nine years they have from time to time been afflicted with disturbance and anguish because of Jean Tinsley. They are now entitled to peace of mind, which can come only from a holding that the adoption should have been granted.