19626

Velerie Hamilton McCORMICK and Bill Carroll McCormick, Appellants, v. Audine McMURRAY, Respondent

(196 S. E. (2d) 642)

*Cleve A. Lytle, Esq.,* of Fort Mill, *for Appellants,* ▮

*Messrs. Charles H. Chiles* and *Emil W. Wald,* of Rock Hill, *for Respondent,*

454

May 9, 1973.

Lewis, Justice:

The issues in this action arise out of a controversy between appellants, as foster parents, and respondent, the natural mother, over the parental rights to, and the custody of, a nine (9) year old child.

Respondent gave birth to a daughter, Cheryl Renee Spinks, on July 1, 1964. Subsequently, on January 1, 1969, respondent delivered custody of the child to appellants, indicating at the time that she would consent to her adoption by them. Later, in January 1970, no adoption having taken place, disagreement arose between the parties about the future of the child, which resulted in the institution of this action by appellants, under Section 31-51.1 *et seq.* of the 1962 Code of Laws, for the purpose of securing an order terminating respondent's parental rights and awarding exclusive custody of the child to appellants. Appellants sought to terminate all rights of respondent, as the natural mother, upon the ground that she had voluntarily abandoned the child for a period in excess of twelve months.

After a hearing, the lower court entered an order on August 3, 1972, holding that respondent had not voluntarily abandoned her child and was entitled to its immediate custody. This appeal is from that order. The exceptions challenge the correctness of the findings of the lower court on both the issue of abandonment and custody. We have concluded that the findings relative to abandonment should be affirmed, while the order granting immediate custody to the respondent be reversed.

We had occasion, in *Bevis v. Bevis,* 254 S. C. 345, 175 S. E. (2d) 398, to consider the statutes under which this action is brought. It was pointed out that Section 31-51.1 *et seq.* provides a statutory remedy, separate from the adoption statutes, for determining whether or not a child has been "voluntarily abandoned." Upon a finding that the child has been "[voluntarily] abandoned for a period in excess of twelve months," the court may issue an order forever barring parental rights, rendering the child eligible for adoption without the consent of the person whose rights have been so barred.

In *Bevis,* we stated the general definition of "voluntary abandonment" as follows:

"While it is difficult to formulate a definition that will cover all cases, as a general rule, 'abandonment imports any conduct on the part of the parent which evinces a settled purpose to forego all duties and relinquish all parental claims to the child.' 2 Am. Jur. (2d) Adoption, Section 32; Annotation: 35 A. L. R. (2d) 662; 2 C. J. S. Adoption of Children § 21d(2). It does not include an act or course of conduct which is done through force of circumstances or from dire necessity."

When the child was placed in the custody of appellants in January 1969, respondent was financially destitute and the child was sick. These facts were known to appellants. In fact, appellants concede that the child was initially delivered by respondent to them because of her destitute circumstances and from dire necessity. They contend however that her conduct during the subsequent twelve month period evidenced a settled purpose to relinquish all parental claims to the child.

The record amply sustains the findings of the lower court that the respondent did not intend to abandon her child. The same circumstances which forced respondent to deliver the child to appellants continued to exist for some time thereafter. As previously stated, the child was delivered to appellants in January 1969. In July 1969, respondent, while

receiving assistance from the welfare department, enrolled in a cosmetology course, completing it some fourteen months later. During this period of financial stress, letters were written by respondent indicating a willingness to permit the adoption of her child. It is reasonably inferable, however, from the record that these letters were prompted by the same circumstances which originally motivated respondent in delivering the child to appellants.

Appellants also rely strongly upon the fact that respondent did not see the child during the year of 1969. Respondent lived in Virginia, while appellants and the child were in Rock Hill, South Carolina. In a letter of February 26, 1969, relied upon by appellants to show the willingness of respondent to permit adoption of the child, respondent stated: "I just don't have the money to come, or I would have been there already." In any event, when appellants wrote respondent on January 4, 1970, about the future of the child and their desire to change her name, respondent was immediately brought to Rock Hill by her employer and evidenced opposition to appellants' plans. Litigation concerning the child was instituted shortly thereafter by appellants and has been pending since.

The record sustains the conclusion reached by the trial judge that respondent's actions were motivated largely by financial necessity and not from a settled purpose to relinquish all parental claims to her child.

The remaining issue concerns custody.

The order of the lower court granting immediate custody to respondent has given us considerable concern. The trial judge, after finding that either home was a proper and fit place for the child, concluded that respondent, as the mother, was entitled to custody; but that "it is not possible to determine the future best interest as between these homes." It is apparent that the decision of the trial judge was influenced to some extent at least by the erroneous legal conclusion that he was required, as between

the parties, to award custody to the mother, and that custody followed the decision as to abandonment. Since his decision as to custody was evidently influenced by an error of law, that issue is remanded for the purpose of further consideration, controlled solely by what is for the *best interest of the child.*

The child is now about nine years of age and is in school. She has been provided and cared for solely and exclusively by appellants since January 1969. What conclusions a further inquiry into the issue of custody will dictate, of course, we do not know; but we are convinced that, under this record, the drastic effect of an immediate change in custody is not in the child's best interest.

The decision of the lower court granting immediate custody of the child to respondent is, accordingly, reversed and the issue of custody remanded to the lower court for further consideration in accordance with the foregoing views; otherwise, the judgment under appeal is affirmed.

Moss, C. J., and Bussey, Brailsford and Littlejohn, JJ., concur.