515 P.2d 1234 (1973)
In the Matter of D. M., a Minor, Appellant,
v.
STATE of Alaska, Appellee.
No. 1843.
Supreme Court of Alaska.
November 23, 1973.
*1235 Herbert D. Soll, Public Defender and Susan Burke, Asst. Public Defender, Anchorage, for appellant.
John E. Havelock, Atty. Gen., Juneau, Timothy G. Middleton, Asst. Atty. Gen., Anchorage, for appellee.
Before RABINOWITZ, C.J., and CONNOR, ERWIN, BOOCHEVER and FITZGERALD, JJ.

OPINION
FITZGERALD, Justice.
Appellant is the natural mother of D.M., a boy of nine years. On petition of the State of Alaska, Department of Health and Social Services (formerly Department of Health and Welfare), the trial court terminated appellant's parental rights and responsibilities.[1]
At the hearings on the petition, the following facts were established.
D.M. was born in 1964 to the appellant and her first husband, a member of the armed services. Two other children in addition to D.M. were born earlier of the same parents. D.M.'s father left Alaska prior to the birth of D.M. and has not been heard from since. D.M.'s mother has continued to reside in Anchorage since the birth of D.M. Soon after his birth, D.M. was placed with foster parents following a custody hearing initiated by the Department of Health and Social Services. At the custody hearing D.M.'s mother admitted to excessive drinking, which sometimes resulted in short jail sentences. The original custody order has been extended from time to time by the court without serious protest on the mother's part. The two older children were also placed in foster homes under the supervision of the Department of Health and Social Services. In 1965 D.M. was placed with his present foster parents, the R's. The R's are a stable family of moderate means and D.M., after some earlier difficulties, has made an excellent adjustment to family life and has progressed well in school. The R's moved to Kenai, Alaska in 1967.
D.M.'s mother has not seen D.M. since 1965, nor has she corresponded with or visited him. Her only contact has been to send Christmas presents on two occasions to him through the Welfare office. The mother was informed of her right to visit D.M., but has never exercised that right, apparently because of her ignorance of the necessary procedures, or lack of funds for traveling, and possibly, as alleged by her, official foot-dragging. She has however made frequent inquiries to Department employees about her son's well-being, and asserted that she hoped one day to regain *1236 custody of D.M. The mother has now remarried and has three more children by her present husband. Since 1967, she has reduced her drinking to some extent, and she has not been jailed since that time.
The R's have now expressed a wish to adopt D.M. in order to be rid of the uncertainty of foster-parent status and because of a desire to make him legally a member of the family. The mother refused to give her consent to the adoption and the State initiated proceedings to terminate her parental relationship to D.M. The State's petition is grounded on an allegation that D.M. has been abandoned by his mother. A termination of the mother's parental rights on the basis of abandonment would enable the R's to adopt D.M. without first obtaining the mother's consent.[2]
The petition came before a trial court which concluded that D.M.'s mother had abandoned him and that her parental rights to D.M. should be severed. The court found that the best interests of D.M. would be served if the mother's parental rights were severed so that he could be adopted by the R's. In addition, the court held that D.M.'s mother was unfit to exercise her parental rights and responsibilities to D.M. The ruling of the trial court led to a final order from which D.M.'s mother now appeals.
Appellant contends that the evidence was insufficient to support the conclusions of the trial court that appellant had abandoned D.M. According to appellant the traditional definition of child abandonment as recognized in proceedings for termination of parental rights or adoption is that abandonment imports conduct on the part of the parent which evinces a settled purpose to forego all parental duties and relinquish all parental claims to the child.[3] This standard, appellant argues, would require proof of an intent by the parent to relinquish all claim to a natural child in order to dissolve the normal legal relationship. Appellant argues that the evidence failed to establish requisite intent on her part to relinquish parental rights to D.M.
The position of the State is that appellant's intent was properly inferred from the realities of her conduct rather than her mere oral protestation. In other words, the State argues that an objective standard should be applied in order to determine whether D.M. was abandoned within the meaning of the statute.
We hold that the evidence supports the conclusion of the trial court that the mother's parental rights should be terminated by reason of abandonment. Her failure to communicate with or to visit D.M. since 1965, her failure to support the child in any way either emotionally or financially, together with the long term commitment of D.M. to a foster home convinces us that the child has been abandoned. We take into consideration as well the finding of the trial judge that it was in D.M.'s own interest that appellant's parental rights be severed. That finding is strongly supported by the reports of Dr. Boyd, a qualified psychiatrist, who made psychological evaluations of the appellant, D.M., and D.M.'s foster parents. Dr. Boyd reported that D.M., while living with the R's,
"has nearly totally grown out of [his] reticence so that he is now only quite shy on initial meetings with strange adults but interacts fully with other children, is a fully active and participating member of the [R] family with their four natural children, and has adjusted well to school where he generally does very good academic work and is well intetegrated socially... . The [R] family ... [has] been the single most important factor in [D.M.'s] attainment of the excellent adjustment he has made."
Whether or not there has been an abandonment within the meaning of the statute is to be determined objectively, taking into account not only the verbal expressions of the natural parents but their *1237 conduct as parents as well. The subjective intent standard often focuses too much attention on the parent's wishful thoughts and hopes for the child and too little on the more important element of how well the parents have discharged their parental responsibility. We acknowledge that parental rights are of serious and substantial import. We note, however, that in recent years the courts have become increasingly aware of the rights of children.[4]
While it may well be that a subjective intent is determinative when dealing with abandonment of personal property, over which the owner exercises an absolute property right, we believe that the relationship between parent and child mandates an objective standard of abandonment which looks to the parent's obligations and rights[5] as well as to whether the natural bonds of love and affection between parent and child have been effectively dissolved by reason of parental conduct.
A better definition of abandonment, for these purposes, is that abandonment consists of conduct on the part of the parent which implies a conscious disregard of the obligations owed by a parent to the child, leading to the destruction of the parent-child relationship.[6]
Other courts have recognized that the child's best interests are properly a consideration in determining whether a parent has abandoned the child:
Too often a preoccupation with parental rights tends to blur the essential right of an infant to end the limbo of foster care ... and secure a permanent parental home either with his natural or adoptive parents. Parental "rights" must not be emphasized to the point of denying the child a parental "home."
The courts have tended to evade or avoid the superior right of an infant to the protection of a permanent home as the most essential element of its emotional well being, by repeated assertions that the best interests of an infant always rest with the blood-related parent, unless the parent is unfit, or has surrendered the child irrevocably for adoption, or has "abandoned" the child intentionally. This may be so, if the concept of abandonment be construed by the courts liberally enough so that the constitutional rights of the infants, rarely asserted, are not derogated or infringed.[7]
In the case now before us the child has become for all purposes a full member of his foster family and his natural parents have had virtually nothing to do with him and no contact with him since 1965. Time and human nature have operated to dissolve the normal bonds between D.M. and his natural mother. In this connection Dr. Boyd noted in the report of his psychological evaluation of D.M.:
"Removing [D.M.] from the [R's] home and replacing him with his mother (appellant) would constitute an extreme and unconscionable psychological assault upon him, removing him from the only family he has ever known and from people *1238 with whom he has profound and healthy emotional attachments and placing him into a home where he is a total stranger, where a quite different style of life is practiced and where fairly extensive and continuing family stresses ... are prominent."
We conclude that the court below committed no error in considering as a relevant factor D.M.'s best interests, nor was the court's ultimate conclusion that an abandonment had taken place erroneous.
Appellant also contends that the trial court's conclusion that she was unfit to exercise her parental responsibilities was in error. The petition filed by the State made no such allegation and our study of the record does not indicate that appellant was either given notice or agreed that this issue would be adjudicated. We hold that this finding of the trial court should be vacated. We note however that the evidence leading to this finding was properly received on the abandonment issue.
Affirmed.
NOTES
[1] Pursuant to AS 47.10.080(c)(3), which provides in part:

If the court finds that the minor is dependent, it [may]
(1) ...
(2) ...
(3) by order, terminate parental rights and responsibilities of one or both parents and commit the child to the department or to a legally appointed guardian of the person of the child, if one of the following canditions exists:
(A) ...
(B) the child has been abandoned for a period of not less than six months by
(i) both parents, or
(ii) the surviving parent, or
(iii) one parent if the other has been deprived of custody and visitation rights;
(C) ...
(D) each parent, or the surviving parent, or one parent if the other has been judicially deprived of custody and visitation rights, has demonstrated by his conduct, proven by clear and convincing proof amounting to more than a preponderance of the evidence that he is unfit to continue to exercise his parental rights and responsibilities.
[2] AS 20.10.040(3).
[3] See Annot., 35 A.L.R.2d 662, 665-6 (1954) and cases there cited.
[4] Due process is now afforded children in adjudicatory proceedings. In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967).
[5] "Of what importance is it to a child if his parents do not `intend' to rob him of the nurture, love and security of a happy home, if such a home is not provided?" Emmons v. Dinelli, 235 Ind. 249, 269, 133 N.E.2d 56, 65 (1956). See also Note, Child Abandonment: The Botched Beginning of the Adoption Process, 60 Yale L.J. 1240, 1244-5 (1951), in which the subjective intent abandonment standard is criticized for its tendency to produce the situation formerly obtaining in the instant case: the child is placed with foster parents to protect its best interests, but the natural parents retain "legal title" to the child by virtue of their "inherent" rights.
[6] A similar formulation was recently used by the South Carolina court in Bevis v. Bevis, 254 S.C. 345, 175 S.E.2d 398, 400 (1970). See also In re Adoption of Oukes, 14 Cal. App.3d 459, 92 Cal. Rptr. 390 (1971).
[7] In re "S", 69 Misc.2d 942, 330 N.Y.S.2d 872, 876-877 (1972). Accord, Bevis v. Bevis, 254 S.C. 345, 175 S.E.2d 398, 400 (1970). See also the majority and dissenting opinions in Delgado v. Fawcett, 515 P.2d 710, Supreme Court of Alaska, issued October 29, 1973.