In the Matter of the **ADOPTION OF A. J. N.**
No. 2103.

Supreme Court of Alaska.

Aug. 16, 1974.

Charles K. Cranston, Gallagher & Cranston, Anchorage, for appellant.

Reginald J. Christie, Jr., Kay, Miller, Libbey, Kelly, Christie & Fuld, Anchorage, for appellee.

## OPINION

Before RABINOWITZ, C. J., and CONNOR, ERWIN, BOOCHEVER and FITZGERALD, JJ.

FITZGERALD, Justice.

R.N. is the natural father of Annyce, a ten year old girl. When Annyce was not quite two years of age her parents were divorced. Several months after the divorce her mother married R.T., who thereupon became Annyce's stepfather. He desired to adopt Annyce and accordingly filed his petition for that purpose in superior court. R.N. filed objections to the petition and the matter went to a hearing before a master of the superior court. The master rec-

ommended that R.T.'s petition be granted and a decree allowing the adoption was entered; R.N. has appealed from the decree.

We conclude that there was error below and order the decree vacated and the petition dismissed.

■ Ordinarily, the consent of the natural parents or legal guardian is necessary in adoption proceedings. However under certain statutorily-specified circumstances, no consent is required.[1]

In his petition R.T. relied on three statutory exceptions to the consent rule. He alleged that Annyce's father had not been awarded either full or partial custody of her, that he had abandoned the child for thirty days preceding the filing of the petition, and that he was unfit to have the care and custody of her.[2]

■ After reviewing the testimony presented in the hearing before the master, and considering his recommendations, the trial court entered a decree granting R.T.'s petition. The rationale of the court's decision is unclear. A finding was made that Annyce's mother was awarded "full and exclusive custody" of her in the divorce proceedings. However, the court also found that R.N. had been given substantial visitation rights. The trial court did not at that time have the benefit of this court's opinion in Delgado v. Fawcett, 515 P.2d

1. AS 20.10.040 provides:
Consent for adoption of a minor is not required
(1) from a parent who was more than one year prior to the filing of a petition for adoption adjudged to be insane, and not thereafter legally declared sane;
(2) from a parent who is imprisoned in the penitentiary at the time of the filing of the petition under sentence for a term of three years or more;
(3) from a parent whose wilful abandonment of the child has been established in a judicial proceeding;
(4) from a parent whose wilful abandonment for a period of not less than 30 days preceding the filing of the petition is established in the adoption proceeding; but the parent shall be personally served with a copy of the petition and notice of hear-

ing inside or outside the state not less than 20 days before the date of the hearing;
(5) from a divorced parent who was not awarded full or part-time custody of the child; but the parent shall be personally served with a copy of the petition and notice of hearing inside or outside the state not less than 20 days before the date of the hearing;
(6) from a parent adjudged by the court to be unfit to have the care and custody of the child, but a copy of the petition and notice of hearing shall be served upon the parent by personal service inside or outside the state at least 20 days before the hearing;
(7) from the natural father if the person to be adopted is a minor of illegitimate birth, not subsequently legitimitized, and notice need not be given him.

2. AS 20.10.040(4), (5), (6).

710 (Alaska 1973), wherein we held that such visitation rights amount to "partial custody" for purposes of AS 20.10.040(5).[3] In the light of *Delgado* the trial court's conclusion is untenable and cannot be the basis for dispensing with the necessity of R.N.'s consent to the adoption. Because the court's finding on the "partial custody" issue was the only finding which on its face could have validated his decision, we must of course vacate the trial court's order.

■ Normally we would remand this case to the trial court for new findings on the other allegations made by R.T. However, in the interests of bringing this matter to a conclusion[4] and because in this appeal we have examined the entire lower court record, we have decided to determine whether the evidence could support a finding that R.N. had either shown his unfitness as a parent or abandoned his child.

■■ Annyce's mother obtained her divorce from R.N. in Pennsylvania in 1966. Within a few months she married R.T., now an Air Force psychiatrist. At the time of the divorce Annyce was placed in the care of her mother; it was understood that R.N. would have reasonable visitation rights. R.N. was able to visit her several times in the period prior to the mother's marriage to R.T. At that point R.N. began having problems in his attempts to visit his daughter. When R.T. accepted employment in North Carolina, a Pennsylvania court modified the divorce decree to allow R.N. six weeks' visitation each year. At the same time R.N. was ordered to pay child support in the amount of $25 per week for Annyce. R.N.'s first effort to exercise his six weeks' visitation right was frustrated when he was informed that Annyce was too ill to visit him in Pennsylvania. He sought the aid of the courts, and in 1968 Annyce's mother, who had failed to appear, was held in contempt by the Pennsylvania court. R.N. was also relieved of his support obligation and all arrearages were remitted. He testified that he has since established a trust fund for Annyce and makes regular payments to it.

R.T., his wife and Annyce moved to Oregon, where in 1970 R.T. filed a petition to adopt Annyce. The Oregon court denied the petition, rejecting R.T.'s claim that R.N. had wilfully deserted or neglected to provide for Annyce for the statutory period.[5] R.N. has maintained steadily that he is willing to contribute to the support of Annyce if he were afforded his visitation rights. Annyce's mother was informed of his offer at the time of the Oregon proceeding but declined to pursue it.

R.T., his wife and Annyce moved to Alaska and soon thereafter R.T. initiated the present petition. The only communication between the parties appears to be in connection with adoption proceedings, and R.N. has had little or no contact with his daughter in recent years.

This history persuades us that there can be no finding that R.N. has "abandoned" his daughter as that term is used in AS 20.10.040(4).[6]

The trial court concluded that adoption is in the best interests of Annyce. This court has stated that the best interests of the child are a valid factor in deciding an

---

3. "We hold that a parent who has the right to visit his children must consent to the adoption of his children." 515 P.2d at 714.

4. R.N. successfully resisted a similar petition filed by R.T. in Oregon; he has expended large sums of money in other states in attempts to realize his visitation rights. R.N. is a man of modest means; we cannot but conclude that these custody battles have taken an unfair toll on his finances.

5. Oregon Revised statute 109.324 provides in part:

"Upon hearing being had, if the court finds that such parent has wilfully deserted or neglected without just and sufficient cause to provide proper care and maintenance for the child for one year next preceding the filing of the petition for adoption, the consent of such parent at the discretion of the court is not required and, if the court determines that such consent is not required, the court shall have authority to proceed regardless of the objection of such parent."

6. *See* n. 1, *supra.*

"abandonment" allegation. In re D.M. v. State, 515 P.2d 1234 (Alaska 1973). However, an abandonment finding cannot be predicated solely on the best interests of the child. In *D.M.* we stated that the test for abandonment is whether there is "conduct on the part of the parent which implies a conscious disregard of the obligations owed by a parent to the child, leading to the destruction of the parent-child relationship."[7] The test focuses on two questions—has the parent's conduct evidenced a disregard for his parental obligations, and has that disregard led to the destruction of the parent-child relationship? The best interests of the child are relevant to the latter question, because it is indicative of a breakdown of the parent-child relationship if the child's best interests are promoted by legal severance of the relation. But the child's best interests may not always be directly relevant to the question of the parent's disregard of his obligations. This part of the test can only be satisfied by proof that the parent's conduct evidences a conscious disregard of his obligations. R.N.'s conduct with respect to his daughter does not evidence a disregard of his parental obligations. He has consistently sought to enjoy his visitation rights only to be frustrated by the obstructions placed in his way by R.T. He has established a trust account for his daughter's benefit. His inability to establish a close relationship with his daughter is not of his doing or choice, but in spite of his wishes. To hold that R.N.'s conduct constituted an abandonment would be totally unfair and could only serve to encourage the obstruction of court-ordered visitation rights.

■ R.T.'s final contention was that R.N. was unfit to continue as the parent of Annyce. Photographs and testimony were admitted to prove that R.N. had placed ink marks on his daughter's stomach and leg in 1967 with a rubber name stamp. It was alleged that the stamp marks were also placed on the private parts of the girl but no photographs of these alleged stampings were taken. R.N. admits playfully placing the stamp marks on the leg and stomach but denies stamping the private parts of his daughter.

In addition, R.T. suspects that R.N. may have sent him unwelcome pornographic literature. R.N. denied this, and testified that he was ignorant of R.T.'s address in Oregon.

Finally, it is urged that R.N. suffers acute anxiety and insomnia resulting from stress situations. Judicial notice was indeed taken by the trial court that raising a child involves stress, but there was no showing that the stress reactions experienced by R.N. would in any way affect his fitness as a parent. We do not dispute this assumption, but we note that R.N. is not asking for "full-time" custody of Annyce. He has only sought to enforce his visitation rights and to defend against the petition for adoption.

The sum total of these disputed assertions cannot warrant finding R.N. unfit as a parent. Our study of the record leads us to conclude that R.T. has failed to prove his claims, and we remand the case with directions that the decree be vacated and the petition dismissed.

RABINOWITZ, Chief Justice (concurring in part, dissenting in part).

I am in agreement with the court's disposition of all issues in this case with the exception of the question of the fitness of R.N. to have the care and custody of Annyce. In regard to this issue I would prefer to follow our "normal" practice and remand the matter to the superior court with instructions to make additional findings of fact and conclusions of law regarding R.N.'s fitness as a parent. Given the importance of this dispute to all involved and the evidentiary background pertaining to R.N.'s fitness I think it preferable that the superior court initially make the requisite findings of fact.

7. 515 P.2d at 1237 (footnote omitted).