0075

Chrystal Kay DONAHUE, Respondent, v. Kelly LAWRENCE and John Winston Donahue, minors under the age of Fourteen (14) years, James Kelly Donahue and Barbara Massengale Donahue, Respondents, of whom Barbara Massengale Donahue is Appellant.

(312 S. E. (2d) 594)

Court of Appeals

*Leo A. Dryer*, Columbia, *for appellant.*

*Daniel H. Shine*, Dillon, *for respondent.*

*Thomas E. Elliott, Jr.*, Columbia, *guardian ad litem.*

Feb. 13, 1984.

CURETON, Judge:

Appellant, Barbara Donahue appeals from the order of the family court that terminated her parental rights to her minor children and permitted the children's stepmother, Chrystal Donahue to adopt them. We find no error and affirm.

The facts of this case are essentially undisputed. Counsel for the parties stipulated for the purposes of this appeal to a summary of the testimony presented to the trial judge.

Barbara Donahue is the natural mother of the minor children, Kelly Lawrence Donahue and John Winston Donahue. Barbara and the children's father, James Donahue, were separated in 1974 at which time Barbara kept the children.

James and Chrystal were married in July 1975. When they later learned that Barbara had not divorced James, the marriage was annulled. James then secured a divorce from Barbara in June, 1977 and remarried Chrystal immediately.

In January, 1976, Barbara carried the children to James's parents' home in Columbia and left them. She testified that she left the children with her in-laws because she was then living with a man in Georgia and felt that the environment was not suitable for rearing her children.

James and Chrystal took the children from his parents' home in early 1976. The children have lived with Chrystal since, even from the time of annulment until the remarriage, during which period James and Chrystal lived apart.

Several witnesses testified that Chrystal was a loving, patient and responsible person who loved the children very much. One child has cerebral palsy and the other a speech impediment. Chrystal has worked with the children untiringly to eliminate or ameliorate these handicaps. At one time, she worked two jobs to support the family when James was injured and unable to work.

The trial judge found that Barbara had abandoned the children pursuant to Section 20-11-20 by willfully failing to visit them for approximately nine months from February through November, 1979 and that Chrystal should be allowed to adopt them.

Barbara concedes that Chrystal is a suitable person to have custody, but takes the position that (1) Chrystal lacks standing to maintain an action to terminate Barbara's parental rights, (2) the question of abandonment was not properly before the trial court, (3) Chrystal has not shown Barbara willfully abandoned her children, and (4) equity dictates Barbara's parental rights not be terminated.

We first consider Barbara's argument that Chrystal lacks standing to prosecute an action to terminate Barbara's parental rights. Barbara argues that Section 20-11-30, Code of Laws of South Carolina, 1976, provides that only a statutorily mandated child protection agency may petition the court for a determination of abandonment.[1] The argument lacks merit because we conclude this is an action for adoption which is governed by Section 15-45-10 through 15-45-180.[2] *D'Augustine v. Bush*, 269 S. C. 342, 237 S. E. (2d) 384 (1977).

It is settled law in South Carolina that the issue of abandonment is properly before the court in an adoption proceeding where the petitioner, lacking written consent to adopt by a parent, seeks judicial termination of the parent's parental rights. *Goff v. Benedict*, 252 S. C. 83, 165 S. E. (2d) 269 (1969); *Bevis v. Bevis*, 254 S. C. 345, 175 S. E. (2d) 398 (1970); *Hamby v. Hamby*, 264 S. C. 614, 216 S. E. (2d) 536 (1975); *D'Augustine v. Bush, supra; Ginn v. Ginn*, 278 S. C. 217, 294 S. E. (2d) 42 (1982). Additionally, Section 20-7-420(4) Code of Laws of South Carolina, 1976, empowers the family court "to hear and determine actions for termination of parental

---

[1] Under the 1962 Code, Section 31.51.1, any "interested person" or "agency" could petition to terminate parental rights. The statute was amended in 1972 to provide for a cause of action by "the agency" alone. Section 31-62, Code of Laws, 1962 (Supp. 1973), later recodified as Section 20-11-30, 1976 Code of Laws. Contrary to Barbara's contention, at the time this case arose this statute again permitted "any interested person" to petition. Section 20-11-30, 1976 Code (Supp. 1980). It is now recodified as Section 20-7-1580, 1976 Code (Supp. 1983).

[2] Recodified as Section 20-7-1560, *et seq.*, 1976 Code (Supp. 1983).

rights, whether such action is in connection with an action for adoption or apart therefrom."

Likewise, we reject Barbara's contention that the trial court should have interpreted the language in the termination statute that a child is deemed abandoned "whose parents have willfully failed to visit . . ." to mean that both parents must be found to have failed to visit or support the child before the child can be found to have been abandoned. Clearly under Section 15-45-70(a), our adoption statute, and the case law, the trial court may as a basis of excusing the consent of a parent whose parental rights have not been terminated entertain the question of whether or not the nonconsenting parent has abandoned the child sought to be adopted. *Goff v. Benedict, supra; Hamby v. Hamby, supra;* and *Ginn v. Ginn, supra.*

We consider the principal issue raised in this appeal to be whether Chrystal carried her burden of proof regarding Barbara's abandonment of her children. Code Section 20-7-1570(1) defines an abandoned child as:

> A child whose parents have willfully failed to visit or have willfully failed to support or make payments toward his support for six consecutive months immediately preceding institution of an action . . . to declare the child to be an abandoned child.

While Section 20-7-1570 purports to define an abandoned child only for purposes of proceedings terminating parental rights, our courts have utilized that definition of abandonment in adoption proceedings.[3] *See Ginn v. Ginn, supra.* We therefore adopt such definition and conclude that the requisite period of time this court must consider in determining that Barbara's conduct amounts to abandonment is the six-month period "immediately preceeding" commencement of the adoption action.

The South Carolina Supreme Court has held that abandonment denotes "any conduct on the part of the parent which evinces a settled purpose to forego all duties and relinquish all parental claims to the child. . . . It does not include an act or

---

[3] Section 20-7-80 of the Code which makes it a crime to abandon a child also adopts the definition of abandonment found in Section 20-7-1570(1).

course of conduct which is done through force of circumstances or from dire necessity." *McCormick v. McMurray*, 260 S. C. 452, 455, 196 S. E. (2d) 642 (1973); *Bevis v. Bevis, supra; see Hamby v. Hamby, supra.*

We have carefully reviewed the record and find that Chrystal has supported by clear and convincing evidence her allegations that Barbara willfully failed to visit or support her minor children. *Santosky v. Kramer*, 455 U. S. 745, 102 S. Ct. 1388, 71 L. Ed. (2d) 599 (1982).

The lower court found that Barbara had not supported or visited the minor children from February 1979 to November 1979, when this adoption action was commenced. Barbara admits she did not support or visit the children during this critical period, but claims her failure was due to financial problems, and more specifically that she could not afford transportation from her place of residence in Greenville to Columbia. We find no merit to this assertion.

The record discloses that Barbara quit her job in Columbia and moved to Greenville away from her children. She found several jobs in Greenville, but quit the last of these jobs in early 1979. She remained unemployed at the time of the trial. Barbara admitted she had been given money for the express purpose of obtaining transportation to get to and from work and to visit her children, but used the money for other purposes. Additionally, Barbara's sister and brother-in-law were willing to provide transportation to enable her to visit the children, but Barbara refused the transportation offer. Finally, we point to Barbara's own testimony that "I do not have any good excuse for not visiting my children."

Lastly, Barbara argues that she was traumatized by James's desertion of her and his remarriage to Chrystal prior to their divorce. She further asserts that Chrystal is a homewrecker, an adulterer and a bigamist. Assuming there was some trauma following the parties' separation and divorce, there is no evidence that this trauma continued into 1979.

The contention that Chrystal was a homewrecker, adulterer and bigamist all relate, we think, to her fitness to adopt the children. Having admitted to Chrystal's fitness as a parent, Barbara's argument is difficult to comprehend. Nevertheless, we have combed the record and find no evidence to

even suggest that Chrystal is unfit to adopt the minor children.

We note that Barbara's attorney was court-appointed and we take this opportunity to commend him for the outstanding manner in which he prosecuted this appeal. We are aware of the demands upon and sacrifices made by court-appointed attorneys in representing indigent parties. We would be remiss if we did not recognize such efforts.

Accordingly, the order of the lower court is

Affirmed.

SHAW and GOOLSBY, JJ., concur.