22124

Ex Parte J. Mack OEHLER and Jackie Oehler, Respondents, v. Brenda (Oehler) CLINTON, Appellant. In Re Brenda (Oehler) CLINTON v. Jay Mack OEHLER and Jackie Oehler.

(317 S. E. (2d) 445)

Supreme Court

*Samuel B. Fewell* and *Charles W. Blackwell*, Rock Hill, *for appellant.*

*Stephen R. McCrae, Jr.*, York, *for respondents.*

Heard April 4, 1984.

Decided June 6, 1984.

NESS, Justice:

This is a child custody case. Appellant, Brenda (Oehler) Clinton, mother, contends the trial court erroneously relied on S. C. Code § 20-7-796(a) (1983 Supp.) of the Uniform Child Custody Jurisdiction Act in declining to exercise jurisdiction to entertain her custody action against respondents, Jay Mack and Jackie Oehler, the child's paternal grandparents. We disagree and affirm.

In October 1976, appellant and Carl M. Oehler were divorced pursuant to an order of the North Carolina District Court. In a subsequent action, Carl Oehler was granted permanent custody of the couple's minor child.

On December 26, 1980, while the child was visiting the mother, who had since moved to South Carolina, Carl Oehler committed suicide. The grandparents immediately requested and were granted temporary custody of the child by order of the North Carolina District Court. Ignoring this order, the mother retained custody of the child and, on December 30, 1980, petitioned the York County (South Carolina) Family Court for an order granting her temporary custody. After a hearing on the matter, the trial court granted the mother custody of the child *pendente lite.*

In February 1981, after conducting a hearing on the merits, which the mother failed to attend, the North Carolina District Court granted permanent custody to the grandparents. Despite receiving notice of this order, the mother continued to refuse to relinquish custody of the child, apparently moving

several times to avoid the grandparents' attempts to regain custody.

Finally, in September 1981, pursuant to the Uniform Child Custody Jurisdiction Act, now codified as S. C. Code Ann. § 20-7-782, *et seq.* (1983 Supp.), the grandparents sought enforcement of the February 1981 custody order by the York County Family Court, which, after declining to exercise jurisdiction over the mother's custody action, ordered her to return the child to respondent grandparents.

The mother first argues the trial court erred in relying on the Uniform Child Custody Act, as the Act did not become effective until after the commencement of this action. We disagree.

"In the construction of statutes, there is a presumption that statutory enactments are to be considered prospective rather than retroactive in their operation unless" the statutes are remedial or procedural in nature. *Hercules, Inc. v. The South Carolina Tax Commission, et al.*, 274 S. C. 137, 143, 262 S. E. (2d) 45, 48 (1980). At oral argument the mother conceded that this legislation is procedural in nature. Consequently, we hold the trial court properly relied on the Act in declining to exercise jurisdiction.

The mother also maintains the trial court erred in refusing to consider her custody action on the merits, claiming South Carolina is the more convenient forum for the determination of the custody issue. We disagree.

S. C. Code Ann. § 20-7-796(a) states:

> A court which has jurisdiction under this subarticle to make an initial or modification decree may decline to exercise its jurisdiction anytime before making a decree if it finds that it is an inconvenient forum to make a custody determination under the circumstances of the case and that a court of another state is a more appropriate forum.

In his order, the trial judge specifically determined South Carolina to be an inconvenient forum, finding: (1) the State of North Carolina had a closer connection with the child, respondents, and appellant; (2) the substantial evidence concerning the child's present or future care, protection, training, and personal relationships was more readily available in North Carolina; and (3) the exercise of jurisdic-

tion by the York County Family Court would foster jurisdictional competition with the North Carolina District Court and encourage a continuing controversy over and possible relitigation of the child support issue, to the detriment of the child.

Although the North Carolina District Court order of February 1981 recognized the possible existence of jurisdiction in both North and South Carolina, we feel the trial court's decision to decline jurisdiction was justified, and hold there was no abuse of the discretion granted to the court by § 20-7-796(a).

During oral arguments, the mother's counsel raised the issue as to whether custody of the child automatically reverted to her upon the father's death. We feel any discussion of this issue was improper, as the mother failed to address this question in either her exceptions or brief. *Smart v. Charleston Mobile Homes, Inc.*, 269 S. C. 588, 239 S. E. (2d) 78 (1977). Nevertheless, we find that even if exception had been taken, the mother's arguments are without merit.

Generally, when a custodial parent dies, the right to custody automatically reverts to the surviving parent. *Derby v. Kim*, 238 Ga. 429, 233 S. E. (2d) 156 (1977); *Comer v. Comer*, 61 N. C. App. 324, 300 S. E. (2d) 457 (1983). This right is not absolute, however, as a surviving parent may be denied custody where she is shown to be presently unfit or "the interests and welfare of the [child] clearly require" alternative custodial supervision. *Comer*, 300 S. E. (2d) at 459.

The record provides ample support for the North Carolina District Court's conclusion that the best interests of the child demanded a transfer of custody to the grandparents at the father's death. Clearly, the extreme emotional instability exhibited by the mother subsequent to her divorce from the father, as evidenced by her inability to retain employment, her frequent changes of residence and innumerable illicit sexual affairs, could only prove to be detrimental to the physical and emotional development of the child. Consequently, we find the North Carolina District Court properly awarded temporary custody to the grandparents upon the father's death, and final custody after a hearing on the merits.

Affirmed.

HARWELL, J., and J. WOODROW LEWIS, as Acting Associate Justice, concur.

LITTLEJOHN, Chief Judge (dissenting):

I respectfully dissent and would reverse the order of the Family Court judge.

Beyond debate, it is appropriate under some circumstances to grant custody of children to grandparents. Conceivably, this may be the proper ultimate determination of the case. *Cook v. Cobb*, 271 S. C. 136, 245 S. E. (2d) 612.

In my view, the North Carolina Court was patently without authority to issue any order after the death of the father of the child. When the father died on December 27, 1980, the litigation between him and his wife, a resident of South Carolina, died also. At that time, both the mother and the child were physically present and domiciled in South Carolina. Under Section 21-21-10 of the South Carolina Code 1976 (Cum. Sup.) parents are joint guardians of minor children. It reads in part as follows:

> The mother and father are the joint guardians of their minor children and are equally charged with their welfare and education and the care and management of their estates and the mother and father shall have equal power, rights and duties and neither parent has any right paramount to the right of the other concerning the custody of the minor or the control of the services or the earnings of such minor or any other matter affecting the minor.

When the father died, the mother not only had the right but also the duty to assume custody and control of the child and, if she did not properly care for the child, could be prosecuted.

After the death of the father, the mother appropriately sought a custody order from the South Carolina Family Court of York. Actually, she did not need such an order.

In an order dated January 13, 1981, from which there was no appeal, the Family Court of York properly found as a matter of fact that mother and child were both physically present and domiciled in South Carolina citing the following:

> Upon the death of the parent to whom custody of a child has been awarded, there is authority that the domicile of

the child becomes that of the surviving parent. This rule has been held to prevail even though the decree of divorce awarding custody of the child to one parent found that the other parent was an unfit, incompetent, and improper person to have custody. [25 Am. Jur. (2d) Domicile Sec. 67].

The Court of Appeals of New York dealt with a similar issue in the case of *In re: Thorne*, 240 N. Y. 444, 148 N. E. 630 (1925). The husband had been granted a divorce and the mother had been found unfit and, accordingly, the infant son was awarded to the husband and father. Upon the husband's death, the right of the mother to custody of the child became an issue. In that case, the court made the following pertinent observations:

When the father dies, the dead hand does not hold the child at the father's domicile. The mother becomes the head of the family. She succeeds to his rights and duties. She may determine where the infant may live. His domicile automatically in legal contemplation attaches to hers. The right rests, not on the actual custody of the child, but on the right of the mother, the matria potestas.

\* \* \* \* \* \*

The infant, generally speaking, has no legal residence of his own, whatever his place of abode may be.

\* \* \* \* \* \*

In this case the mother's rights were taken from her by the judgment of divorce, but were revived as against the world by the death of the husband.

\* \* \* \* \* \*

The dilemma, it would seem, is this: Shall she be ignored as an outcast or recognized as a mother? If she is not to be ignored, if the child is still her child, her rights must be regarded. Her rights as a parent, not as a married woman, to the care and custody of the child, becomes superior to that of all others, unless it should be shown anew by the child's relatives or custodians that she is an unfit person to exercise such guardianship.

\* \* \* \* \* \*

The child resides with his mother in the contemplation of the law, even though he be living elsewhere, until otherwise disposed of by competent authority, and that authority, so far as this case is concerned, is the Surrogate's Court of the County of the mother's domicile.

If the grandparents desired to contest the mother's obvious legal right to custody of her child, they should have been required to do so in this South Carolina proceeding. With all due respect to the North Carolina Court, I am of the opinion that the grandparents were not entitled, as permitted by the North Carolina judge, to intervene in a lawsuit which died with the death of the father.

I am not unaware that the Uniform Child Custody Jurisdiction Act, Section 20-7-782 *et seq.* effective July 1, 1981, gives to a Family Court Judge wide discretion in settling jurisdictional conflicts. Nevertheless, I disagree with the reasoning of the Family Court Judge who held that the South Carolina Court should give up jurisdiction over the child in favor of the North Carolina Court because of the doctrine of forum conveniens.

The York County Courthouse in South Carolina and the Mecklenburg County Courthouse in North Carolina are approximately thirty-two miles apart. I submit that it is just as convenient for North Carolina grandparents to drive to York, South Carolina to prosecute a claim as it is for a mother and her child to travel to Charlotte, North Carolina, to defend a claim.

As indicated herein above, it is conceivable that the grandparents may in the last analysis be entitled to custody of the child. This is a matter which in my view should await a trial on the merits in the South Carolina Court. In my view, the only issue for our court to determine on this appeal is whether the mother should be permitted to litigate in her own state where both she and the child are domiciled, or if she should be required to litigate in California, Arizona, Michigan or even in the State of North Carolina, which happens to be close by, merely because that is where the grandparents happen to reside.

The best interest of the child was not proper for adjudication in North Carolina and the South Carolina Court erroneously refused to provide the mother with a forum. The

majority opinion would give weight to the contention that the mother's counsel did not raise "... the issue as to whether custody of the child automatically reverted to her upon the father's death." This involved a proposition of law which the judge should have taken into consideration before he attempted to force the mother to litigate in a foreign state. The matter is encompassed in the mother's last exception wherein she submits that the lower court erred in refusing to "... hold a hearing on the merits, ...."

I would hold that the mother was entitled to litigate in her own State as a matter of law, but, if it be decided that the judge was entitled to exercise his discretion, I would hold that he abused that discretion.

Accordingly, I would reverse and remand.

GREGORY, A. J., concurs.