606 S.E.2d 785

**Diane Q. BROWN, Appellant,**

v.

**George C. BROWN, Respondent.**

**No. 3901.**

Court of Appeals of South Carolina.

Heard Nov. 9, 2004.

Decided Dec. 6, 2004.

88

Thomas M. Neal, III, of Columbia, for Appellant.

James C. Cothran, Jr., of Spartanburg, for Respondent.

ANDERSON, J.:

In this family court action, Diane Q. Brown (Mother) appeals the family court order awarding custody of the couples' three children to George C. Brown (Father). We affirm.

## FACTUAL/PROCEDURAL BACKGROUND

Father and Mother were married on December 16, 1991 and have three children, Melissa Rene, born December 17, 1991, and twins, Nicholas George and Natalie Rae, born June 10, 1995. The parties separated on October 30, 2000, and Mother initiated divorce proceedings on the ground of adultery. Father did not contest the divorce. The parties reached an agreement settling all property and financial matters. The only contested issues before the family court were custody of the minor children, attorney's fees, and detective fees. On appeal, the only contested issue is custody of the minor children. The family court awarded custody of the three minor children to Father; who, by the time of trial, had moved in with his parents.

## STANDARD OF REVIEW

"In appeals from the family court, the court of appeals has jurisdiction to find the facts in accordance with its view of the preponderance of the evidence." *Emery v. Smith*, 361 S.C. 207, 603 S.E.2d 598, 601 (2004) (citing *Rutherford v. Rutherford*, 307 S.C. 199, 414 S.E.2d 157 (1992)); *Upchurch v. Upchurch*, 359 S.C. 254, 257–58, 597 S.E.2d 819, 821 (Ct.App. 2004). Although this Court may find facts in accordance with our own view of the preponderance of the evidence, we are not required to ignore the fact that the trial judge, who saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony. *See Woodall v. Woodall*, 322 S.C. 7, 471 S.E.2d 154 (1996); *Bowers v. Bowers*, 349 S.C. 85, 561 S.E.2d 610 (Ct.App.2002); *Murdock v. Murdock*, 338 S.C. 322, 526 S.E.2d 241 (Ct.App. 1999). In particular, an appellate court "should be reluctant to substitute its own evaluation of the evidence on child custody for that of the trial court." *Woodall* at 10, 471 S.E.2d at 157. Our broad scope of review does not relieve appellant of her burden to convince this Court the family court commit-

ted error. *Skinner v. King,* 272 S.C. 520, 522–23, 252 S.E.2d 891, 892 (1979).

## *ISSUES*

I.  Did the family court err in awarding custody of the minor children to Father?

II.  Did the family court err by failing to adequately consider the preferences of the minor children?

III.  Did the family court award de facto custody to the paternal grandparents?

## *LAW/ANALYSIS*

### I.  Custody of the Minor Children

■ Mother first argues the family court erred in awarding custody of the minor children to Father.  We disagree.

■ The paramount and controlling factor in every custody dispute is the best interests of the children.  *Shirley v. Shirley,* 342 S.C. 324, 330, 536 S.E.2d 427, 430 (Ct.App.2000); *Paparella v. Paparella,* 340 S.C. 186, 189, 531 S.E.2d 297, 299 (Ct.App.2000).  Custody decisions are left largely to the discretion of the trial court.  *Shirley* at 330, 536 S.E.2d at 430.

In *Shirley,* we articulated the South Carolina rule governing custody cases:

In all child custody controversies, the controlling considerations are the child's welfare and best interests.  In reaching a determination as to custody, the family court should consider how the custody decision will impact all areas of the child's life, including physical, psychological, spiritual, educational, familial, emotional, and recreational aspects. Additionally, the court must assess each party's character, fitness, and attitude as they impact the child.

342 S.C. at 330, 536 S.E.2d at 430 (citations omitted); *see also Pirayesh v. Pirayesh,* 359 S.C. 284, 296, 596 S.E.2d 505, 512 (Ct.App.2004) ("When determining to whom custody shall be awarded, the court should consider all the circumstances of the particular case and all relevant factors must be taken into consideration."); *Bragg v. Bragg,* 347 S.C. 16, 22, 553 S.E.2d 251, 254 (Ct.App.2001) (providing the totality of circumstances

peculiar to each case constitutes the only scale upon which the ultimate decision of child custody can be weighed).

■■■■■ "The relative fitness of parents is an important issue in custody litigation. . . . Fitness decisions normally turn on either of two considerations; whether either parent has been the primary caretaker, or whether either parent has engaged in conduct which would affect the welfare of the child." Roy T. Stuckey, *Marital Litigation in South Carolina* 433 (3rd ed. 2001). "Although there is no rule of law requiring custody be awarded to the primary caretaker, there is an assumption that custody will be awarded to the primary caretaker." *Patel v. Patel,* 359 S.C. 515, 527, 599 S.E.2d 114, 120 (2004) (citation omitted).

> In South Carolina, in custody matters, the father and mother are in parity as to entitlement to the custody of a child. When analyzing the right to custody as between a father and mother, equanimity is mandated. We place our approbation upon the rule that in South Carolina, there is no preference given to the father or mother in regard to the custody of the child. The parents stand in perfect equipoise as the custody analysis begins.

*Kisling v. Allison,* 343 S.C. 674, 678, 541 S.E.2d 273, 275 (Ct.App.2001). Additionally, child custody is not granted to a party as reward or withheld as punishment. *Davenport v. Davenport,* 265 S.C. 524, 527, 220 S.E.2d 228, 230 (1975); *Clear v. Clear,* 331 S.C. 186, 191, 500 S.E.2d 790, 792 (Ct.App. 1998).

■■■■ Morality of a parent is a proper factor for consideration in determining custody of children. *Davenport* at 527, 220 S.E.2d at 230. However, the effect of a parent's morality is limited in its force to what relevancy it has, either directly or indirectly, to the welfare of the child. *Id.*

Recognizing this was a "close custody case," the family court noted that "both parties love the children and the children clearly love both parents, and have a close relationship with both." The court order states that "both parties were the primary caretakers of the children[.]" The court did not find Mother unfit, but concluded custody with Father was in the children's best interest.

Specifically, the family court found the children have had excessive tardies at school and held Mother to be the significant factor causing the children's tardies. This finding is supported by the testimony of Marlene Cordoso, a school employee, who testified that most of the children's tardiness occurred when Mother brought the children to school. She further averred Mother was late on occasion when it was her responsibility to pick up the children from the after-school care program. Moreover, Ms. Cordoso stated Mother failed to pick up a sick child from school after agreeing to do so.

Other personnel at the school testified Mother sometimes would bring the children to school without their lunches. This did not occur when Father brought their lunches. The school employees further averred the children were better groomed and properly clothed in winter months when in the care of Father as opposed to Mother.

Nancy Hogsed, a babysitter for the children, corroborated the testimony of Ms. Cordoso. According to Ms. Hogsed, Mother frequently was late and would fail to pick up the children at the requisite time. Additionally, Mother was often late to or absent from the children's birthday parties, award functions, and sporting events. Mother lost her job at the hospital for excessive tardiness and absenteeism.

Furthermore, several witnesses offered testimony of Mother's poor temperament. The witnesses stated Mother loses her temper with her daughter Melissa and cursed at the child. Mitzi Kirsch, a realtor who listed the marital residence, testified to a "screaming rampage" and verbal abuse inflicted on her by Mother while Ms. Kirsch was attempting to sell the marital residence. The relationship became so difficult that Ms. Kirsch withdrew the listing of the home.

Although Father admittedly engaged in an adulterous relationship, he professed the amoret had ended and he was currently attending church. The amalgamation of witness testimony reveals Father: (1) was active in raising the children; (2) often cooked meals; (3) helped with school work; (4) took the children to church; and (5) attended the children's recreational events. Consequently, ample evidence exists to support the trial judge's conclusion, "Husband has the preferable temperament for dealing with the children."

To support her position, Mother proffers the improvement the children made in school while they were in her care. She contends that since the parties' separation, the children have been late less and have improved their grades, and, therefore, the family court erred by awarding custody to Father. However, we find the family court properly weighed the factors and exercised discretion in awarding custody with Father. The family court balanced the adulterous indiscretions of Father against the shortcomings of Mother in deciding to award custody to Father. There is substantial evidence in the record to support the award of custody to Father, including: (1) Mother's inability consistently to have the children to school on time; (2) her inattentiveness to the children's lives; and (3) her poor temperament around the children.

The family court considered how the custody decision would impact the children's lives and assessed each parties' attributes. It determined the well-being of the children was best served by an award of custody to Father. We find the family court properly analyzed this custody situation pursuant to the statutes and case law of this state and did not abuse its discretion in awarding custody to Father.

## II. Children's Preferences

Mother contends the family court erred in failing to consider the preferences of the minor children. We disagree.

"In determining the best interests of the child, the court must consider the child's reasonable preference for custody. The court shall place weight upon the preference based upon the child's age, experience, maturity, judgment, and ability to express a preference." S.C.Code Ann. § 20-7-1515 (Supp.2003); *see also Moorhead v. Scott*, 259 S.C. 580, 585, 193 S.E.2d 510, 513 (1972) (holding the wishes of a child of any age may be considered under all the circumstances, but the weight given to those wishes must be dominated by what is best for the welfare of the children). The significance to be attached to the wishes of children in a custody dispute depends upon the age of the children and the attendant circumstances. *See Smith v. Smith*, 261 S.C. 81, 85, 198 S.E.2d 271, 274 (1973). The child's preference will be given little weight

where the wishes of the child are influenced by the permissive attitude of the preferred parent. *Id.* at 86, 198 S.E.2d at 274.

The trial judge is not required to take testimony from the children where (1) counsel fails to request that the judge take the testimony and (2) the children's guardian ad litem testifies as to the children's preferences. *See Perry v. Perry,* 315 S.C. 373, 375, 433 S.E.2d 911, 912 (Ct.App.1993); *see also Dodge v. Dodge,* 332 S.C. 401, 505 S.E.2d 344 (Ct.App.1998) (finding the court's decision not to interview an eleven-year-old child was not an abuse of discretion).

The twins were approximately six years old at the time of trial, and Melissa was approximately ten. Although the guardian ad litem recommended custody be awarded to Father, he asseverated: "[A]ll three children stated they had a preference to live with their mother." The guardian explained:

The reasoning for Nicholas and Natalie is just—I don't think they are really mature enough to really tell me why they wanted to live with her. Melissa, I think, is more connected, based on my conversations with her, is more connected. She wants to stay in the neighborhood with the children she has grown up with all these years. But, of course, that's not going to happen.

*Guinan v. Guinan,* 254 S.C. 554, 176 S.E.2d 173 (1970), the leading South Carolina case on children's preferences, dealt with the custody dispute over a sixteen-year-old boy. Our supreme court reversed the family court's award of custody to the mother, holding:

Ordinarily, the wishes of a child of this boy's age, intelligence and experience, although probably not controlling, *Ex parte Reynolds,* 73 S.C. 296, 53 S.E. 490 (1906), are entitled to great weight in awarding his custody as between estranged parents. Annot., 4 A.L.R.3d 1396, 1434 (1965). The court made no finding of fact tending to offset this important factor in awarding custody, and the record before us is bare of any evidence tending to do so. Absent any evidence tending to establish that the best interest of the boy would be served by awarding his custody to the mother,

the court erred in failing to allow him to live with the parent of his choice.

*Id.* at 557–58, 176 S.E.2d at 174.

*Moorhead v. Scott,* 259 S.C. 580, 193 S.E.2d 510 (1972), involved a change of custody action by a father attempting to obtain custody of his children, ages eight, eleven, and twelve. *Id.* at 582, 193 S.E.2d at 512. The family court awarded a change of custody to the father based on its finding of a substantial change of conditions and the children's preference to live with their father. *Id.* at 584, 193 S.E.2d at 512. In reversing, the supreme court noted the difference in weight to be given a child's preference based upon their age and elucidated that the children's best interests—not the children's preference—is the cardinal determination in custody decisions:

> Our Court has given little significance to the wishes of a six year old child. *Poliakoff v. Poliakoff,* 221 S.C. 391, 70 S.E.2d 625 (1952). On the other hand, our Court has given great weight to the wishes of a child sixteen years of age. *Guinan v. Guinan,* 254 S.C. 554, 176 S.E.2d 173 (1970). It is clear that the wishes of a child of any age may be considered under all the circumstances, but the weight given to those wishes must be dominated by what is best for the welfare of the children.

*Id.* at 585, 193 S.E.2d at 513.

In summation, South Carolina law requires the family court to consider a child's reasonable preference for custody. However, the weight given to the child's preference depends upon the child's age, experience, maturity, judgment, and ability to express a preference. And a determination of the best interests of the child is paramount to the child's preference.

Although the six-year-old twins expressed a preference for Mother, we find *Poliakoff* and *Moorhead* counsel that minimal weight should be given the preference of such young children. Ten-year-old Melissa's wishes should be given more weight because she is older. However, even the weight given the preference of a ten-year-old does not rise to the level of "great weight" that should be given the desires of a sixteen-year-old. *See Bolding v. Bolding,* 278 S.C. 129, 293 S.E.2d 699 (1982) (reversing change of custody of eleven-year-old because "Fa-

ther failed in his burden of establishing a change of condition sufficient to warrant a transfer of custody, as the only change alleged or proved involved the wishes of the eleven-year-old child."); *see also* Roy T. Stuckey, *Marital Litigation in South Carolina* 454 (3rd ed. 2001) ("Judging from the handful of South Carolina cases on children's preferences, it appears that somewhere between 12 and 14 may well be the ages at which the wishes of the child should be given serious consideration."); *Patel v. Patel,* 359 S.C. 515, 599 S.E.2d 114 (2004) (upholding award of custody of thirteen-year-old daughter to the mother where daughter expressed "definite desire" to live with mother).

Moreover, the preference of any child is merely a factor in the analysis—it is not determinative. The family court, cognizant of the children's wishes, considered the factors in this custody decision and reasonably concluded it was in their best interests to be with Father. We find no abuse of discretion.

### III. De Facto Custody

■ Mother argues the custody award to Father was actually a de facto custody award to the children's paternal grandparents. She claims the grant of custody was error because (1) the grandparents were not parties to the action, and (2) even if the grandparents had been parties to the action, Mother would have to have been adjudged unfit under *Moore v. Moore,* 300 S.C. 75, 386 S.E.2d 456 (1989) in order for custody to go to the grandparents. We find this argument without merit.

The family court considered the work schedules of both parties in its analysis and found:

> Although husband's third shift job and his living with his parents would, normally be a negative factor against his receiving custody, the Court believes that this negative factor is not significant. The children have a close relationship with their paternal grandparents. The paternal grandparents have often times assisted the parents in caring for the children. . . . This living arrangement will actually assist the husband in caring for the children since the grandparents will be home with the children while he is working third shift.

This Court expressly rejects the principle entitled "de facto" custody. Factually, "de facto" custody, even if recognized, is

not presented or proven in this case. Apodictically, custody was awarded to Father, not the grandparents. The family court merely factored the paternal grandparents into the custody analysis. Mother cites no law supporting her theory of de facto custody, and we refuse to erect a rule that would punish a parent solely because he or she chooses to live with his or her parents.

Further, we find *Moore* inapposite as that case addressed the rebuttable presumption that "it is in the best interest of any child to be in the custody of its biological parent." 300 S.C. at 79, 386 S.E.2d at 458 (citing *Kay v. Rowland,* 285 S.C. 516, 331 S.E.2d 781 (1985); *Cook v. Cobb,* 271 S.C. 136, 245 S.E.2d 612 (1978)). The case at bar deals with a custody dispute between the two parents, not between a parent and a third party. Concomitantly, the court did not need to find Mother unfit to award custody to Father. We find granting custody to the Father, partially because of the assistance available from the paternal grandparents, was not tantamount to de facto custody and did not constitute an abuse of discretion.

## *CONCLUSION*

Accordingly, the decision of the family court awarding custody to Father is hereby

**AFFIRMED.**

STILWELL and SHORT, JJ., concur.