THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
Jill Ann Bailey Boone and Paul Boone,       
Respondents,
 
 
 

v.

 
 
 
Jerry D. Bailey and Tyra C. Bailey,       
Appellants.
 
 
 

Appeal From Greenville County
R. Kinard Johnson, Jr., Family Court Judge

Unpublished Opinion No. 2005-UP-186
Submitted January 1, 2005  Filed March 11, 2005

AFFIRMED AS MODIFIED

 
 
 
David D. Armstrong, of Greenville, for Appellants. 
Jill Bailey Boone and Paul Boone, Pro Se, Respondents.
 
 
 

PER CURIAM:  This appeal arises from a dispute between Jerry and Tyra Bailey and Jill and Paul Boone over the custody of children born during the marriage of Jerry Bailey and Jill Boone.  The Baileys appeal the family courts decision to leave custody with the Boones.  We affirm as modified.[1]  
FACTS
Jerry Bailey and Jill Boone, whose marriage was terminated by a divorce order entered on March 5, 1998, have three minor children.  Pursuant to the divorce decree, Jill maintained custody of the children while Jerry received visitation rights.  
The Boones filed an action in family court seeking to place further restrictions on the Baileys visitation rights.  The Baileys counterclaimed, seeking to revoke the Boones custodial rights, claiming they created a detrimental educational environment in the way they chose to home school the children.  
To support their claim, the Baileys contacted a licensed clinical psychologist who opined the Boones were not providing adequate educational or social opportunities for the children.  Further, the psychologist stated Jill had transferred her negative feelings about Jerry to the children, who were now exhibiting negative thoughts about him.  
On cross-examination, the psychologist admitted the majority of her information about the Boones came from Jerry and the Guardian ad Litem, not from direct interaction with Jill.  She also admitted to a lack of personal knowledge about the home schooling organization the Boones belonged to.  Further, she admitted to concerns about the Baileys as well as the Boones.  
The Guardians report noted that each parent cared deeply for the children and wanted the best for them.  The Guardians first recommendation was to leave the children in the custody of the Boones due to the upheaval a change in custody would cause.  However, a second report indicated any trauma over a change was outweighed by the benefits the children would receive by way of educational and social opportunities with the Baileys.  
Jill testified she home-schooled her children and met all guidelines for home schooling as required by S.C. Code Ann. § 59-65-47 (Supp. 2003).  She admitted the children showed some learning difficulties with certain subjects, but asserted they were close to their appropriate grade level.  Additional testimony indicated the children engaged in social and educational opportunities with other children through home school co-ops wherein parents brought their children together to be around other home-schooled children.  The children were also found to be active in youth sports programs and participants with their family in church activities.  
The family court declined to change the custodial arrangement.  It did, however, order the Boones to select a different, more stringent standard for home schooling the children.  
STANDARD OF REVIEW
An appellate court may find facts based on its own view of the preponderance of the evidence in a case originating in family court.  Roberson v. Roberson, 359 S.C. 384, 388, 597 S.E.2d 840, 842 (Ct. App. 2004).  However, this broad scope of review does not relieve an appellant from the burden of convincing this court that the lower court erred.  Brown v. Brown, 362 S.C. 85, 89-90, 606 S.E.2d 785, 787 (Ct. App. 2004).  Further, such a broad scope of review does not require us to disregard the family courts findings, especially in light of the knowledge that a trial judge is in a better position to evaluate the credibility of a witness through personal observation.  Roberson, 359 S.C. at 388, 597 S.E.2d at 842.  The inability of an appellate court to perform such observations necessitates we give great deference to the family courts findings in cases involving the welfare and best interests of children.  See Brown, 362 S.C. at 89, 606 S.E.2d at 787.
LAW/ANALYSIS
I.  Custody
The Baileys principal contention is the family court failed to properly consider the testimony of the witnesses and thus erred in denying their motion for a change of custody.  We are not persuaded by this argument.
The paramount and controlling factor in every custody dispute is the best interests of the children.  Brown, 362 S.C. at 90, 606 S.E.2d at 788.  Custody decisions are normally matters left to the discretion of the trial court.  Id.
In situations where a change in custody is sought, the non-custodial parent bears the burden of showing changed circumstances occurring subsequent to the entry of the custody order.  Henggeler v. Hanson, 333 S.C. 598, 602, 510 S.E.2d 722, 725 (Ct. App. 1998).  A change in circumstances justifying a change in the custody of a child simply means that sufficient facts have been shown to warrant the conclusion that the best interests of the child will be served by the change.  Skinner v. King, 272 S.C. 520, 523, 252 S.E.2d 891, 892-93 (1979).
The primary reason for the request for the change of custody was the perceived educational and social shortcomings resulting from the Boones home schooling of the children.  Both the Guardian and the psychologist testified to their belief the children would be presented with more social and cultural events with the Baileys.  However, both noted much of the information they received was through communications with Jerry.  
Jill testified to the cultural, social, and education opportunities her children were exposed to.  She also testified regarding their educational abilities and achievements.  
The family courts order demonstrates a carefully considered opinion based on the testimony.  Although neither parent is perfect, the evidence indicates that neither is grossly insufficient.  Jill was thought by the psychologist to have failed to foster her childrens relationship with their father.  Yet, the psychologist noted Jerry had disciplinary issues with the children.  In sum, each sought to provide what they felt best for their children, although each often failed to overcome the acrimony between themselves that is often present in such situations.  
The Guardians reports were full of such tensions, with the first report recommending the present custody situation remain the same, while a subsequent report suggested it change.  From such evidence, the court could have concluded not enough evidence was presented by Jerry to order the change of custody.  As the family court noted, both parties have had changes in circumstances; however, the court is not convinced the changes warrant a change of custody. 
While the Baileys presented evidence regarding problems with the welfare of the children and the perceived need to alter the custody arrangement, there was also evidence indicating the children were doing well with the Boones and had problems when at the Baileys household.  Based on our own view of the evidence, we cannot say the family court erred in concluding there are insufficient changes of circumstances to warrant a change of custody.
II.  Home School Choice
To combat possible perceived shortcomings in the childrens home school environment, the family court required Jill to select either Option 1 or Option 2 of Section 59-65-47 of the South Carolina Code.  The Baileys argue this provision of the order is ambiguous and/or unclear, because there is only one option provided in this specific section and we must therefore reverse.  We disagree.
The intent of the family court is readily discernible.  We may therefore modify what we determine to be a scriveners error.  
Home schooling is governed by sections 59-65-40, -45, and -47 of the South Carolina Code.  The three sections contain Options 1, 2, and 3, respectively, of the various disciplines allowed for home schooling.  Option 1 requires mandatory annual testing.  Option 2 requires instruction be conducted under the auspices of the South Carolina Association of Independent Home Schools, and Option 3 only requires the parent to be a member of an approved home school association with no fewer than fifty members.  Option 1 is considered the most stringent of the three, and Option 3 to be the least stringent.  
At the time of the hearing, Jill home-schooled the children under Option 3.  If the family court wished her to continue to home-school the children under section 59-65-47, there would be no need to give her the choice of selecting Option 1 or Option 2.  This fact, coupled with evidence before the family court that the children were not performing at adequate academic levels, evidences the family courts clear intent to require more stringent oversight of the childrens education to assure they have greater academic progress.  Option 1 and Option 2 in the order clearly reflect the family courts desire, a desire with which we agree in light of the record, for Jill to select from the home schooling options in either sections 59-65-40 and -45, not -47 as the order indicates.
CONCLUSION
It is evident from the record and order that the family court considered all evidence in denying the motion to change custody.  The court did not abuse its discretion in retaining the existing custody arrangement.  Further, the courts clear intention was to provide for greater oversight of the childrens academic well-being by mandating Jill choose between the home schooling options under 59-65-40 or -45. 
AFFIRMED AS MODIFIED.  
ANDERSON, STILWELL, and SHORT, JJ., concur.  

[1]         We decide this case without oral argument pursuant to Rule 215, SCACR.