THIS
 OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS
 PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 Jesse and
 Amanda G., Respondents,
 v.
 Gerald and Fay
 E., James and Elsie S., Guadaloupe and Brenda G., Edwin and Lisa R., and South
 Carolina Department of Social Services, Defendants,
 Of Whom South Carolina
 Department of Social Services and Gerald and Fay E. are the Appellants.
 
 
 

Appeal From Greenwood County
  Billy A. Tunstall, Jr., Family Court
Judge

Unpublished Opinion No. 2009-UP-621
 Heard October 10, 2009  Filed December
29, 2009

AFFIRMED IN PART, REVERSED IN PART, AND
REMANDED

 
 
 
 Heather Hite Stone, of Abbeville, for Appellants
 Gerald and Fay E.
 Scarlet B. Moore, of Greenville, for
 Appellant South Carolina Department of Social Services.
 Desa Ballard, of West Columbia and Billy
 Garrett, Jr. of Greenwood, for Respondents.
 Adam Bacot, of Greenwood, for Guardian Ad
 Litem.
 
 
 

PER CURIAM: The
 South Carolina Department of Social Services (DSS) and Gerald and Fay E. appeal
 from the family court's order finding a substantial
 change of circumstances justified Jesse and Amanda G. (Father and Mother) regaining
 custody of their minor children (Daughter and Son, collectively Children).  We
 affirm in part, reverse in part, and remand.  
FACTS
 While Father was married to another woman, he began
 dating Mother.  Thereafter, Mother became pregnant with Father's child,
 Daughter.  However, Father and Mother stopped seeing each other prior to
 Daughter's birth on June 29, 2002.  In 2004, Father and Mother started dating
 again.  Subsequently, Father divorced his wife, and on March 13, 2005, Father
and Mother married.  Father has three sons from his previous marriage.  
DSS first
 became involved with Father and Mother in 2004, when allegations arose that
 Daughter had been physically abused.  Two instances triggered DSS involvement.
 First, Daughter's daycare provider alleged Daughter had been physically abused. 
 Second, Father and Mother failed to follow a doctor's instruction to have
 Daughter x-rayed.  
On
 November 30, 2004, Dr. Dan Robinson referred Daughter to Dr. Steve Skinner for
 an evaluation because there was an eight-month history of recurring pain and
 swelling in Daughter's lower legs. During the appointment, Dr. Skinner noted
 there was trauma over Daughter's mid spine that had healed and bruises on her
 buttocks, back, right arm, and left foot; however, Dr. Skinner did not suspect
 abuse.  Dr. Skinner recommended Mother take Daughter to the hospital for an
 x-ray.  According to Mother, she waited at the hospital with Daughter for one
 hour; however, they left before having an x-ray because Dr. Skinner did not
 tell her it was urgent and Daughter was hungry and tired.  
On
 December 11, 2004, Emmie Burns, Daughter's babysitter, observed Daughter
 complaining of pain in her left leg.  As a result, Burns contacted Dr. Skinner
 and Mother about the pain in Daughter's leg.  Later that day, Burns took
 Daughter to the emergency room where Dr. Skinner ordered a full body x-ray. 
 The x-ray revealed multiple fractures involving the left lower leg, left femur,
 and left upper arm.  The fractures were isolated to Daughter's left side and
 all were in various stages of healing, ranging three to four weeks.  Dr.
 Skinner consulted with Dr. John Cathcart, an orthopedic surgeon, who previously
 examined Daughter.  On December 13, 2004, Dr. Skinner and Dr. Cathcart admitted
 Daughter to the hospital for casting.  The same day, Mother went into preterm
 labor with Son.  
Thereafter,
 Daughter was taken into emergency protective custody.  Gerald and Fay E.,
 Daughter's maternal relatives, volunteered to take custody of Daughter.  At the
 probable cause hearing, Father and Mother consented to Gerald and Fay E. obtaining
 legal and physical custody of Daughter.  In January 2005, Son was born.  Son
 lived with Mother for approximately five weeks following his birth; however,
 Son was then placed with Lisa R., his grandmother, and James and Elsie S., Son's
 great-grandparents.  
At the merits
 hearing on November 23, 2005, Father and Mother agreed to an order finding: (1)
 they medically neglected Daughter; (2) they failed to protect Daughter; and (3)
 a possible threat of harm to Son existed.  Additionally, the family court found
 Daughter was physically abused "by a perpetrator whose identity has not
 been determined."  The family court prohibited Father and Mother from
 having any unsupervised visitation with Daughter or Son.  The family court
 placed legal and physical custody of Daughter with Gerald and Fay E., and Son's
 legal and physical custody was awarded jointly to Lisa R. and James and Elsie S.[1] 
 The family court found the agreement was in Children's best interests.  The
 family court's order also permitted DSS to close its case "since all
 parties agree that there are no services which []DSS can offer [Father and
 Mother]."  
On
 May 14, 2007, Father and Mother filed a complaint in the Greenwood County
 family court alleging a substantial change in circumstances justified a change
 in custody.  Gerald and Fay E. counterclaimed, requesting the family court
 allow them to retain custody of Daughter.  
The
 family court conducted a hearing September 15-18, 2008.  At the hearing, no one
 was able to testify with certainty as to how Daughter was injured.  Dr. Skinner
 and Dr. Cathcart both opined they believed Daughter was abused.  However, no
 evidence was introduced to prove Mother or Father abused Daughter.  
According
 to Karen Neelands of Crossroads Pregnancy Center, Father and Mother attended
 and completed various parenting classes from October 27, 2005 to April 25, 2006. 
 The classes Father and Mother completed involved discipline, creative
 parenting, anger management, nutrition, and budgeting.  Additionally, Father
 and Mother completed an eight-hour course in CPR and first aid.  
James
 S., Son's great-grandfather, and Brenda G., Father's mother, acknowledged Father
 and Mother were young and immature but have since matured.  Both testified Father
 and Mother were now fit and should regain custody of Daughter and Son.  
Father
 and Mother testified at the hearing.  Father and Mother both admitted they
 medically neglected Daughter in failing to have her x-rayed in 2004.  However, they
 denied abusing Daughter or knowing who harmed Daughter.  Father and Mother
 acknowledged they knew of Daughter's bruises.  Mother explained she looked for
 a medical explanation as to what caused the bruises, while Father attributed
 the bruising to the fact Daughter bruised easily and played with his sons.  Father also suggested Daughter's day care
 provider may have abused Daughter.  According to Gerald and Fay E., there had
 been no bruising on Daughter since she had been in their custody; however,
 Daughter was injured while playing on a chair.  
Father
 and Mother admitted in 2004 they were not fit parents; however, both asserted
 at the hearing they are now fit.  Since Daughter and Son's removal, both have
 maintained stable employment and housing.  Additionally, Father and Mother have
 lived in the same house, next door to Father's parents, since October 2005.  If
 returned to Father and Mother, Daughter and Son would have their own bedrooms. 
 Both Father and Mother believe it is in Children's best interests to be
 reunited.  According to Mother, she relinquished custody of Daughter and Son
 because she did not want her parental rights terminated.  
However,
 Cherry Mactaggart, Daughter's counselor, did not believe Daughter and Son
 should be returned to Father and Mother.  Likewise, Fay E. believed it was in
 Daughter's best interest to remain in her care.  Although Gerald and Fay E. did
 not know if Father and Mother abused Daughter, they believed Daughter was in
 danger of abuse if Father and Mother obtained custody.  Steve Strome, the
 county director of Greenwood DSS, testified DSS did not want a change in
 custody because Daughter suffered severe physical injuries while in Father and
 Mother's custody, and these injuries had not reoccurred since Father and Mother
 consented to relinquish custody.  
The guardian ad litem (GAL) also testified at the
 hearing.  The GAL expressed concerns over any decision to return Children to Father
 and Mother.  The GAL believed Father and Mother still need supervised
 visitation, and Father and Mother were not aware of the severity of Daughter's
 injuries.  
Following
 a hearing, the family court concluded Father and Mother "have
 substantially and positively changed their circumstances and lifestyles, in
 their and their children's best interest . . . ."  As a result, the family
 court ordered physical and legal custody of Daughter and Son be returned to Father
 and Mother.  Gerald and Fay E. filed a motion pursuant to Rule 59(e), SCRCP,
 which the family court denied.  DSS filed a petition for supersedeas, which
 this court denied.  This appeal followed.   
STANDARD OF REVIEW
In
 appeals from the family court, the court of appeals has jurisdiction
 to find the facts in accordance with its view of the preponderance of the
 evidence.  Brown v. Brown, 362 S.C. 85, 89-90, 606 S.E.2d 785,
 787 (Ct. App. 2004).  Although this court may find facts in accordance
 with our own view of the preponderance of the evidence, we are not required to
 ignore the fact that the family court judge, who saw and heard the witnesses,
 was in a better position to evaluate their credibility and assign comparative
 weight to their testimony.  Id.  In particular, an appellate court
 should be reluctant to substitute its own evaluation of the evidence on child
 custody for that of the family court.  Id.  Our broad scope of review
 does not relieve appellants of their burden to convince this court the family
 court committed error.  Id.  
ISSUES
I.  Did the family court err
 in finding a substantial change of circumstances justified a change of custody?
II.  Did the family court
 incorrectly apply the doctrine of psychological parent and erroneously conclude
 the bond between Daughter and Gerald and Fay E. did not overcome the
 presumption in favor of a biological parent?
III.  Did the family court
 abuse its discretion in denying Gerald and Fay E.'s and DSS's motion to present
 hearsay testimony pursuant to section 19-1-180 of the South Carolina Code?
IV.  Did the family court
 abuse its discretion in awarding GAL fees and GAL's attorney's fees?
LAW/ANALYSIS
I.  Custody of Minor
 Children
DSS
 and Gerald and Fay E. argue the family court erred in finding a substantial
 change of circumstances justified a change in custody.  We disagree. 
The
 best interest of the child is the primary and controlling consideration in all
 child custody controversies.  Moore
 v. Moore, 300 S.C. 75, 79, 386 S.E.2d 456, 458 (1989).  Nevertheless,
 there is a rebuttable presumption that it is in the best interest of any child
 to be in the custody of his or her biological parent.  Id.  In Kay v.
 Rowland, 285 S.C. 516, 517, 331 S.E.2d 781, 782 (1985), the supreme
 court placed a substantial burden on any third party attempting to take custody
 over a biological parent and "recognized the superior rights of a natural
 parent in a custody dispute with a third party. Once the natural parent is
 deemed fit, the issue of custody is decided." 
"Since the paramount
 consideration of the court[] is the welfare of the child, the dilemma is how to
 assure that parents who temporarily relinquish custody for the child's best
 interest can regain custody when conditions become more favorable."  Moore,
 300 S.C. at 79, 386 S.E.2d at 458.  This court should consider
 the following in custody determinations when natural parents seek to reclaim
 custody of their child: (1) whether the parents have proved they are fit parents, able to properly care for the child and
 provide a good home; (2) the amount of
 contact, in the form of visits, financial support or both, which the parents
 had with the child while the child was in the care of a third party; (3) the
 circumstances under which temporary relinquishment occurred; and (4) the degree
 of attachment between the child and the temporary custodian.  Id. at
 79-80, 386 S.E.2d at 458-59. 
The
 order in the case presently before us indicates the family court considered
 each of the foregoing factors in reaching the decision to award custody to Father
 and Mother.  Our own application of the Moore factors reveals the family
 court did not err in finding Father and Mother are now fit parents able to
 provide a good home for Children.  Evidence in the record indicates since Father
 and Mother relinquished custody of Children, Father and Mother have married; maintained
 stable employment; obtained adequate housing; and, upon their own initiative,
 completed numerous parenting classes.  Further, at the time of the hearing, no
 one was able to offer any evidence Father and Mother abused Children. 
Considering the
 second Moore factor, Father and Mother consistently visited Daughter and
 Son on weekends since Children's removal.  According to Mother, she sees
 Daughter three weekends a month, presumably indicating she sees Son the same. 
 However, Mother admits she did not visit Daughter during the week.  Mother pays
 Gerald and Fay E. approximately $90 every two weeks in child support.  Fay E.
 testified she did not expect any financial support from Father and Mother. 
 Rather, she assumed custody out of love for Daughter.  Father and Mother also purchased
 Daughter clothes, but Daughter leaves them at Mother and Father's home so she
 does not have to pack for visits.  Moreover, Father and Mother now have had
 custody of Daughter and Son for almost one year.
Regarding
 the third factor, the relinquishment occurred due to Father and Mother's
 medical neglect of Daughter.  Father and Mother have continually denied abusing
 Daughter, and for almost four years, no one has offered any evidence to the
 contrary.  Moreover, Mother, Father, Gerald E., and Fay E. consented to the
 child-care arrangement. When Daughter was placed in Gerald and Fay E.'s home, Father
 and Mother believed they could resume custody once they became fit parents.  According
 to Mother, she relinquished custody because she did not want her parental
 rights terminated.  
Finally,
 we observe the evidence presented regarding the degree of attachment between Children
 and their respective custodians.  Evidence indicates a strong emotional bond
 between Children and their custodians.  We commend Gerald and Fay E. for coming
 forward and volunteering to assume custody of Daughter during a very difficult
 situation.  By all accounts, Daughter did well while in their care.  However, Father
 and Mother continued to visit Children after they relinquished custody, which indicates
 Children have continued to maintain a strong bond with Father and Mother as
 well.  Accordingly, we find the family court did not err in finding a
 substantial change of circumstances justified a change in custody.
II.  Psychological Parent Doctrine
DSS
 and Gerald and Fay E. contend the family court incorrectly applied the
 psychological parent doctrine.  According to DSS and Gerald and Fay E., the
 family court erred in concluding Gerald and Fay E. failed to rebut the
 presumption that it was in Daughter's best interest to be placed with her
 natural parents. According to DSS and Fay and Gerald E., no burden exists.  We
 disagree.
There
 is a rebuttable presumption that it is in the best interest of any child to be
 in the custody of biological parents.  Moore, 300 S.C. at 79, 386 S.E.2d
 at 458; Dodge v. Dodge, 332 S.C. 401, 410, 505 S.E.2d 344, 349 (Ct. App.
 1998) (quoting Moore); see also Middleton v. Johnson, 369
 S.C. 585, 604, 633 S.E.2d 162, 172 (Ct. App. 2006) ("The limited right of
 the psychological parent cannot usually overcome the legal parent's right to
 control the upbringing of his or her child.").  In Moore, the
 Supreme Court explained, "[i]f a party relinquishes custody in good faith
 because of some temporary inability to provide for the child, such parent
 should be able to regain custody upon a showing that the condition which
 required relinquishment has been resolved. Child custody should not be subject
 to change because of adverse possession."  Id. at 81, 386 S.E.2d at
 459.   
The parties do not dispute
 the family court's finding that a psychological parent-child relationship
 exists between Gerald and Fay E. and Daughter.  Rather, DSS and Gerald and Fay E.
 contend the family court erred in finding they have the burden to prove it is in
 Daughter's best interest to remain in their custody.  We believe, in accordance
 with Moore, the family court correctly concluded Gerald and Fay E. carry
 the burden to rebut the presumption it is in Daughter's best interest to be
 placed with Father and Mother once the family court found them to be fit
 parents.  See Middleton, 369 S.C. at 604, 633 S.E.2d at 172 (finding
 the psychological parent must present compelling circumstances to rebut the
 presumption that a fit, legal parent has the right to control the upbringing of
 his or her child).  
III.  Hearsay Testimony
DSS
 and Gerald and Fay E. argue the family court erred in not admitting Daughter's
 hearsay testimony under section 19-1-180(B)(2) of the South Carolina Code. 
 They assert Daughter was unavailable to testify because she was unable to
 communicate the details of her physical abuse due to fear and emotional
 trauma.  We disagree.  
"The
 admission or exclusion of evidence is left to the sound discretion of the trial
 court, and the court's decision will not be reversed absent an abuse of
 discretion."  S.C. Dep't of Soc. Servs. v. Lisa C., 380 S.C. 406,
 411, 669 S.E.2d 647, 650 (Ct. App. 2008).  "In order for this court
 to reverse a case based on the erroneous admission or erroneous exclusion of
 evidence the plaintiff must show error and prejudice."  Osterneck
 v. Osterneck, 374 S.C. 573, 579, 649 S.E.2d 127, 131 (Ct. App. 2007).
An
 out-of-court statement made by a child under twelve years of age concerning an
 act of alleged abuse or neglect as defined by section 63-7-20 of the South
 Carolina Code (2008) may be admissible in a family court proceeding.  In order
 to be admissible, the family court must find the child is unavailable to
 testify on any one of the following grounds: (1) the
 child's death; (2) the
 child's physical or mental disability; (3) the
 existence of a privilege involving the child; (4) the
 child's incompetency, including the child's inability to communicate about the
 offense because of fear; or (5) the
 substantial likelihood the child would suffer severe emotional trauma from
 testifying at the proceeding or by means of videotaped deposition or
 closed-circuit television.  S.C. Code Ann. § 19-1-180(B)(2)(a) (Supp. 2008). 
 Additionally, there must be a showing the statement possesses "particularized
 guarantees of trustworthiness."  S.C. Code Ann. § 19-1-180(B)(2)(b) (Supp.
 2008).  
The
 family court found Daughter was available to testify by either videotape or
 closed-circuit television.  Cherry Mactaggart, Daughter's licensed counselor,
 testified that based on play therapy with Daughter, Daughter should not
 testify.  Mactaggart explained Daughter has been diagnosed with post-traumatic
 stress disorder.  Initially, Daughter had difficulty with eating, sleeping,
 attachment, expressions, approaching adults, and shyness; however, she opined Daughter
 had made substantial progress.  During therapy sessions, Mactaggart did not
 attempt to elicit how Daughter might respond to a court setting.  Mactaggart acknowledged
 Daughter was mentally capable of testifying and knew the difference between the
 truth and a lie.  The family court denied DSS's motion to admit Daughter's
 hearsay testimony, finding Daughter could testify by videotape or closed-circuit
 television.   
At the time of the
 hearing, Daughter was six years of age, and almost four years had passed since
 her removal.  Evidence indicated Daughter was mentally competent and knew the
 difference between right and wrong.  Accordingly, we do not believe the family
 court erred in finding Daughter could testify by videotape or closed-circuit
 television.[2]
IV.  GAL Fees and GAL's Attorney's
 Fees
Gerald
 and Fay E. maintain the family court's order contains no findings of fact to
 support the award of GAL fees and GAL's attorney's fees.  We agree.   
Appointment
 of a GAL in a private action is controlled by the South Carolina Private
 Guardian Ad Litem Reform Act (the Act), which became effective January 15,
 2003, and states:

 (A) In a private action before the family court in
 which custody or visitation of a minor child is an issue, the court may appoint
 a guardian ad litem only when it determines that:
 (1)
 without a guardian ad litem, the court will likely not be fully informed about
 the facts of the case and there is a substantial dispute which necessitates a
 guardian ad litem; or
 (2)
 both parties consent to the appointment of a guardian ad litem who is approved
 by the court.

 S.C. Code Ann. § 63-3-810 (2008).
 Furthermore, the Act authorizes the family court to appoint an attorney to
 represent a non-attorney GAL.  See S.C. Code Ann. § 63-3-820(E) (2008).
 When the family court determines the appointment of an attorney to represent
 the GAL is necessary, it must "set forth the reasons for the appointment
 and must establish a method for compensating the attorney."  Id.  
Section
 63-3-850(A) of the South Carolina Code (2008) provides: 

 At the
 time of appointment of a [GAL], the family court judge must set forth the
 method and rate of compensation for the [GAL], including an initial
 authorization of a fee based on the facts of the case. If the [GAL] determines
 that it is necessary to exceed the fee initially authorized by the judge, the
 guardian must provide notice to both parties and obtain the judge's written
 authorization or the consent of both parties to charge more than the initially
 authorized fee.

The statute also provides the
 GAL is entitled to "reasonable compensation, subject to the review and
 approval of the court."  S.C. Code Ann. § 63-3-850(B) (2008).  In
 determining the reasonableness of the fees and costs, "the court must take
 into account" the following factors:

 (1) the complexity of the issues before the court; (2)
 the contentiousness of the litigation; (3)
 the time expended by the guardian; (4)
 the expenses reasonably incurred by the guardian; (5)
 the financial ability of each party to pay fees and costs; and (6)
 any other factors the court considers necessary. 

Id.  In Loe v. Mother, Father, & Berkeley County
 Dep't of Soc. Servs., 382 S.C. 457, 473-474, 675 S.E.2d 807, 816 (Ct.
 App. 2009), this court found the reasonableness of a GAL's attorney's fees
 should also be determined in light of these statutory factors.  
A
 review of the family court's order does not reveal the court considered the
 statutory factors in awarding GAL and GAL attorney's fees.  We
 do not address whether the GAL and GAL attorney's fees were properly approved
 pursuant to section 63-3-850 or whether the fees are reasonable. Instead, we reverse the award of fees and remand for a determination of whether the statutory requirements were met in
 authorizing fees for the GAL and the GAL's attorney and a determination of
 reasonableness pursuant to the factors specified in section 63-3-850(B).  
CONCLUSION
Based on the foregoing, we find the family court did
 not err in finding a substantial change of circumstances justified a return of
 custody to Father and Mother.  We affirm the family court's finding that Daughter
 was available to testify by videotape or closed-circuit television.  However,
 we reverse the award of GAL and GAL attorney's fees and remand this issue to
 the family court. 
AFFIRMED
 IN PART AS MODIFIED, REVERSED IN PART, AND REMANDED. 
SHORT,
 WILLIAMS, and GEATHERS, JJ., concur.

[1] The family court's order
 also outlined a visitation schedule for all parties. 
[2] DSS and Gerald and Fay E. also contend the family
 court erred in not admitting the testimony pursuant to Rule 803(4) of the South
 Carolina Rules of Evidence.  Pursuant to Rule 803(4), SCRE, "[s]tatements
 made for purposes of medical diagnosis or treatment and describing medical
 history, or past or present symptoms, pain, or sensations, or the inception or
 general character of the cause or external source thereof insofar as reasonably
 pertinent to diagnosis or treatment" are admissible.  We find Rule 803(4),
 SCRE, does not apply in the present case.  Even if Rule 803(4) is applicable,
 the exclusion of the hearsay testimony was not prejudicial because the family
 court gave DSS an opportunity to interview Daughter and put forth Daughter's
 testimony, which DSS failed to do.  Because of this failure, DSS cannot show
 both error and prejudice.