**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Jennifer K., Appellant,

v.

Robert K., Respondent.

Appellate Case No. 2010-154546

Appeal From York County
Robert E. Guess, Family Court Judge

Unpublished Opinion No. 2012-UP-489
Heard June 21, 2012 – Filed August 15, 2012

**AFFIRMED**

Christina Brice Thompson, of The Baxter Law Firm, of Fort Mill, and Carrie Ann Warner, of Warner Payne & Black, LLP, of Columbia, for Appellant.

Jane M. Randall, of Rock Hill; Thomas F. McDow, IV, and Erin K. Urquhart, both of Law Office of Thomas F. McDow, of Rock Hill, for Respondent.

**PER CURIAM:** In this divorce action, Jennifer K. (Mother) argues the family court erred in: (1) finding Robert K. (Father) did not sexually abuse one of their

children; (2) awarding custody of the children to Father; (3) restricting Mother's phone contact with the children; (4) apportioning the marital debt; and (5) awarding Father attorney's fees. We affirm.

## FACTS

Mother and Father were married in October 2004 and separated in April 2008. They had two children at the time of their separation: a three-year-old daughter and a one-year-old daughter (collectively, Children). After Mother and Father separated, Mother and Children moved to Charlotte, North Carolina to live with Mother's mother. Father continued to reside in the marital home in Rock Hill; he had visitation with Children every other weekend.

On June 4, 2008, Mother filed a complaint seeking separate maintenance, custody, equitable distribution of property, attorney's fees, and other relief. Father filed an answer and counterclaim seeking dismissal of Mother's complaint and a divorce on the ground of Mother's adultery. He additionally sought custody of Children, restricted visitation between Children and Mother, equitable distribution of marital property, attorney's fees, the appointment of a guardian ad litem (GAL), and other relief.

On July 18, 2008, Mother's mother notified Mother the older child (Child), then age three, had told her, "Daddy touched my bottom with a stick." Thereafter, Mother questioned Child, who told her Father had "touched her bottom way up to her belly" with a stick. Mother then examined Child and noted her vaginal and anal areas were red. Subsequently, Child was examined by her pediatrician, Dr. Wendy Baker. Dr. Baker noted Child's vaginal area to be intact. After the medical exam, Dr. Baker reported the case to the North Carolina Division of Social Services (NCDSS) as a "possible sexual assault."

Upon referral from NCDSS, a forensic interview and medical examination were scheduled with Pat's Place Child Advocacy Center. On July 30, 2008, Child was interviewed by Christopher Ragsdale, MSW, LCSW. During the interview, Child denied that Father had touched her inappropriately. Furthermore, the medical examiner found no indication of sexual abuse.

A temporary hearing was held on August 6, 2008, to determine temporary custody of Children. At that time, Mother informed the court of the sexual abuse allegations against Father and the pending investigation by NCDSS. Due to these

allegations, the court issued a temporary order awarding Mother custody of Children.  The order appointed April Counterman as GAL.  Additionally, the court ordered Father to have no contact with Children until further order by the court.

On September 2, 2008, NCDSS determined the allegations of sexual abuse were unfounded and closed the investigation file.  Additionally, the York County Solicitor's Office and the Tega Cay Police Department closed the case after an extensive review of the forensic evidence.  Thereafter, Mother informed the Tega Cay Police Department that Child had disclosed to an employee at her daycare that Father touched her inappropriately with a stick.  Detective Harry Spence advised Mother to contact the Dickerson Center for Children.

On October 15, 2008, Child met with Lysa Miller-DuPre, LMSW, at the Dickerson Center.  Child reported to Miller-DuPre that Father had touched her vaginal area with a stick that he got "off the ground."  When asked where Father got the stick, Child responded "in his pants."  Due to the inconsistencies in Child's statements, Miller-DuPre recommended an evaluation by a therapist who specialized in evaluating sexual abuse cases.

Child began attending play therapy sessions with Caroline McCloud, MSW, LCSW in October 2008.[1]  Child told McCloud that Father touched her vaginal area with "an actual stick."  McCloud believed Child's allegation of abuse against Father; she also believed Child met the requirements of having post-traumatic stress disorder. McCloud recommended Child not have further contact with Father.

In an order dated December 31, 2008, the family court ordered psychologists, Drs. William and Madalyn Tyson, to evaluate Child, Father, and Mother.  Dr. Madalyn Tyson met with Child for six clinical interviews.  Additionally, Father and Mother individually met with Dr. William Tyson for a series of clinical interviews.  Drs. Tyson and Tyson also met with McCloud.  Based on their psychological evaluations and review of the files, Drs. Tyson and Tyson found the occurrence of sexual abuse was unlikely.

The final hearings were held on November 30, December 1, December 2, December 3, December 11, 2009, and February 4, 2010.  In an order issued on March 12, 2010, the family court granted Father a divorce on the ground of

---

[1] Child attended play therapy sessions with McCloud from October 2008 to November 2009.

Mother's adultery.[2]  The family court found Child was not sexually or otherwise abused by Father; thereafter, the court awarded Father custody of Children, established a standard visitation schedule with modified phone contact, obligated Mother to pay Father child support, equitably apportioned the marital estate, and required Mother to pay $9,000 towards Father's attorney's fees of $34,688.64.  This appeal followed.

## STANDARD OF REVIEW

On appeal from the family court, this court reviews factual and legal issues de novo.  *Simmons v. Simmons*, 392 S.C. 412, 414, 709 S.E.2d 666, 667 (2011).  Although this court reviews the family court's findings de novo, "[it] is not required to disregard the findings of the trial judge who was in a superior position to make credibility determinations."  *Lewis v. Lewis*, 392 S.C. 381, 385, 709 S.E.2d 650, 651-52 (2011).   Further, the burden is upon the appellant to convince this court that the family court erred in its findings.  *Id.* at 385, 709 S.E.2d at 652.

## ISSUES ON APPEAL

1.  Did the family court err in finding Father did not sexually abuse Child?

2.  Did the family court err in awarding custody of Children to Father and restricting Mother's phone contact?

3.  Did the family court err in dividing the marital debts?

4.  Did the family court err in failing to make the requisite findings of fact on which to base the award of attorney's fees?

---

[2] The family court issued an amended divorce and custody order on September 21, 2010 to correct factual errors regarding Mother's place of residence; the amended decree also added a finding that reconciliation between the parties was not possible.

# LAW/ANALYSIS

## I. Sexual Abuse Allegations

Mother argues the family court erred by finding Father had not sexually abused Child. We affirm.

"[C]onsistent with our constitutional authority for *de novo* review, an appellant is not relieved of his burden to demonstrate error in the family court's findings of fact." *Lewis*, 392 S.C. at 392, 709 S.E.2d at 655. "Consequently, the family court's factual findings will be affirmed unless 'appellant satisfies this court that the preponderance of the evidence is against the finding of the [family] court.'" *Id.* (quoting *Finley v. Cartwright*, 55 S.C. 198, 202, 33 S.E. 359, 360-61 (1899)).

In our opinion, the family court properly considered the evidence regarding the validity of Child's sexual abuse allegation. Neither Dr. Baker nor the medical examiner found any signs of sexual abuse. Furthermore, NCDSS deemed the case unfounded and closed the case file after a complete investigation. Moreover, the York County Solicitor's Office closed the case after an extensive review of the forensic evidence. Additionally, Drs. Tyson and Tyson both testified the occurrence of sexual abuse appeared unlikely. Despite the battery of interviews and examinations conducted in this case, there was no definitive psychological or medical evidence presented at trial that Child was sexually abused. Accordingly, we affirm the family court's finding that Father did not sexually abuse Child.

## II. Bests Interests of the Children

### A. Custody

Mother contends the family court erred in awarding Father custody of Children. We affirm.

In considering the best interest of Children, we take note of several facts. Mother testified that, while married to Father, she exposed Children to her paramour. Mother admitted that she went out to a sports bar for several hours, leaving Children unattended while a neighbor listened out for them on a baby monitor. *See Davis v. Davis*, 356 S.C. 132, 135, 588 S.E.2d 102, 103-04 (2003) (holding that in a child custody case the best interest of the child is the paramount and controlling factor); *see also Brown v. Brown*, 362 S.C. 85, 91, 606 S.E.2d 785, 788 (Ct. App.

2004) (holding the court may consider the morality of a parent in determining custody of children when it is relevant "either directly or indirectly, to the welfare of the child").  Furthermore, Mother testified that, if awarded custody, she would inform Child the judge was making Child visit Father.  *See Morehouse v. Morehouse*, 317 S.C. 222, 226-27, 452 S.E.2d 632, 634-35 (Ct. App. 1994) (upholding an award of custody to father when mother was unwilling to encourage a relationship between the child and father).  Additionally, the family court found Mother acted inappropriately during Father's supervised visits with Children.  *See Watson v. Poole*, 329 S.C. 232, 239, 495 S.E.2d 236, 240 (Ct. App. 1997) (granting custody to father based, in part, on mother's unwillingness to facilitate the child's visitation with the father).  Accordingly, we find the family court did not err in awarding Father custody of Children.

**B. Visitation**

Mother claims the family court erred in restricting Mother's phone contact with Children.  We affirm.

Initially, we note this issue is not preserved for our review.  *See Ellie, Inc. v. Miccichi*, 358 S.C. 78, 99, 594 S.E.2d 485, 496 (Ct. App. 2004) (holding that when an issue is not argued within the body of the brief, but is only a short, conclusory statement, it is abandoned on appeal).  However, we address this issue, because "procedural rules are subservient to the court's duty to zealously guard the rights of minors." *Joiner ex rel. Rivas v. Rivas*, 342 S.C. 102, 107, 536 S.E.2d 372, 374 (2000).

Here, Mother sent a cell phone with Child during a November 2009 visit.  In addition, Mother repeatedly called Father's parents' home during a December 2009 visit.  In limiting Mother's phone contact with Children, the family court properly considered Mother's previous abuse of phone communication.  *See Woodall v. Woodall*, 322 S.C. 7, 12, 471 S.E.2d 154, 158 (1996) ("When awarding visitation, the controlling consideration is the welfare and best interest of the child." (citations omitted)); *Frye v. Frye*, 323 S.C. 72, 76, 448 S.E.2d 586, 588 (Ct. App. 1994) ("A family court may impose upon a noncustodial parent such conditions and restrictions on his visitation privileges as the court, in its discretion, thinks proper.").  Therefore, we affirm the family court's modification of the standard visitation schedule.

## III. Equitable Distribution

Mother argues the family court failed to weigh and consider each of the fifteen equitable apportionment factors in rendering its judgment. Specifically, Mother contends the family court failed to consider Father's economic misconduct in equitably dividing the marital assets. We affirm.

It is evident from the family court's order that the court was cognizant of the required equitable distribution factors. *See Pirayesh v. Pirayesh*, 359 S.C. 284, 300, 596 S.E.2d 505, 514 (Ct. App. 2004) ("[O]ur focus is on whether the family court addressed the statutory factors governing apportionment with sufficiency for us to conclude that the court was cognizant of these factors."). Furthermore, Mother acknowledged the mortgage debt was marital debt. No evidence was presented to suggest that Father's accumulation of mortgage debt constituted misconduct. *See McDavid v. McDavid*, 333 S.C. 490, 496, 511 S.E.2d 365, 368 (1999) ("[W]e hold poor business decisions, in and of themselves, do not warrant a finding of marital, 'misconduct' and that there must be some evidence of willful misconduct, bad faith, intention to dissipate marital assets, or the like, before a court may alter the equitable distribution award for such misconduct."). Accordingly, the family court did not abuse its discretion when apportioning the marital debt.

## IV. Attorney's Fees

Mother contends the family court erred in ordering her to pay $9,000 towards Father's attorney's fees. According to Mother, the family court failed to appropriately weigh and consider the *E.D.M.* and *Glasscock* factors in awarding attorney's fees to Father. *See E.D.M. v. T.A.M.*, 307 S.C. 471, 476-77, 415 S.E.2d 812, 816 (1992); *Glasscock v. Glasscock*, 304 S.C. 158, 161, 403 S.E.2d 313, 315 (1991). We affirm.

Here, the family court set forth specific findings of fact for each of the *E.D.M.* and *Glasscock* factors. *See Griffith v. Griffith*, 332 S.C. 630, 646, 506 S.E.2d 526, 534-35 (Ct. App. 1998) (noting the family court order awarding attorney's fees must set forth specific findings of fact for each of the required factors). Accordingly, we find the family court did not abuse its discretion in awarding Father attorney's fees. *See Lewis*, 392 S.C. at 394, 709 S.E.2d at 656 (holding the decision to award attorney's fees is within the family court's sound discretion).

**AFFIRMED.**

**PIEPER, KONDUROS, and GEATHERS, JJ., concur.**